# SUPREME TRIBE OF BEN–HUR *v.* CAUBLE ET AL.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 274. Submitted January 10, 1921.—Decided March 7, 1921.

1. A suit brought against a fraternal benefit association, and its officers, by some, in behalf of all, of the members of a class of its beneficiaries so numerous that it would be impracticable to join all as parties, to determine their rights as a class respecting the disposition and control of trust funds held by the association, is cognizable by the District Court, where diversity of citizenship exists between the parties complainant and defendant, and the decree will bind all members

of the class, including those not parties who are co-citizens with the defendant. P. 363.

2. Recognition of the jurisdiction to bind absentees in such cases is manifest in the omission from Equity Rule 38, promulgated in 1912, of the earlier provision making the decree without prejudice to their rights and claims. P. 366.

3. Equity Rule 38, dealing specifically with this subject, controls Equity Rule 39. P. 366.

4. Having rendered a decree in a class suit defining the rights of a class of beneficiaries of a fraternal benefit association, the District Court has ancillary jurisdiction of a bill brought by the association against members of the class who are citizens of the same State as itself and were not parties to the original suit, to restrain them from reopening the questions thus settled by suits against it in the state courts. P. 367.

264 Fed. Rep. 247, reversed.

THE case is stated in the opinion.

*Mr. Charles M. McCabe, Mr. Samuel D. Miller, Mr. William H. Thompson, Mr. Benjamin Crane* and *Mr. Frank C. Dailey* for appellant.

*Mr. William C. Bachelder* for appellees.

MR. JUSTICE DAY delivered the opinion of the court.

This case is here upon a question of jurisdiction. Jud. Code, § 238. Appellant is a fraternal benefit association organized under the laws of the State of Indiana. It filed a bill against Aurelia J. Cauble and others, citizens and residents of Indiana, to enjoin them from prosecuting in the state courts certain suits which, it is averred, would relitigate questions settled by a decree of the United States District Court for Indiana; it being the contention that all the members in Class A in the Supreme Tribe of Ben-Hur, including the appellees, were bound and concluded by the federal decree.

The bill was filed upon the theory that it is ancillary in character, and justifies a decree to protect the rights

adjudicated in the original proceeding. A motion to dismiss for want of jurisdiction was sustained. 264 Fed. Rep. 247.

The ancillary bill alleges that the questions decided in the original suit determined:

(1) The right of the Supreme Tribe of Ben-Hur to create a new class of benefit certificate holders known as Class B. (The membership in such society up to July 1, 1908, having been in the class thereafter to be designated as Class A.) (2) The right of the society to determine that all benefit certificates issued after July 1, 1908, should be Class B certificates, and that no Class A certificates should be issued after that date, and no new members taken into Class A, from that time. (3) The right of the Supreme Tribe of Ben-Hur to require members of Class B to pay different rates for their insurance from members of Class A. (4) The right of the Supreme Tribe of Ben-Hur to require that the mortuary funds of the two classes be kept separate and distinct, and that the death losses occurring therein should be paid out of the funds of each class respectively. (5) The right of the Supreme Tribe of Ben-Hur to authorize members of Class A to transfer, upon a written application therefor, to Class B, and to take with them into Class B their interest in the mortuary and other funds of the society, created, or arising prior to July 1, 1908, and require the Class B members to pay a monthly payment and rate in excess of that paid by Class A members. (6) The right of the Supreme Tribe of Ben-Hur to require members remaining in Class A, and not transferring to Class B, to pay a sufficient number of monthly payments, or assessments, to meet the death losses in Class A. (7) The right of the Supreme Tribe of Ben-Hur to use the expense fund of the society for the purpose of creating Class B, and to induce Class A members to transfer to Class B, and to secure new members in Class B. (8) Whether

the Supreme Tribe of Ben-Hur had used the expense fund in a manner justified by its constitution and by-laws and a general examination of expenditures which had been made by that society, out of its expense fund, and the purpose for which these expenditures had been made, and whether any of them were made in violation of the rights of Class A members.  (9) The right of the Supreme Tribe of Ben-Hur to use its expense fund, including all questions as to whether payments made out of it were equitable and just, or inequitable, wrongful and unlawful; and the question of whether the maintenance of a general expense fund, and the payment of the entire expenses of the society therefrom, was fair, just and legal.  (10) Whether the Supreme Tribe of Ben-Hur had wrongfully, or unlawfully, inaugurated a campaign to persuade and induce the members of the society belonging to Class A to give up their certificates in Class A, and to apply for and procure membership and certificates in Class B; or whether the action of the society, and its officers, in that connection, was rightful, just and equitable.  (11) The question of whether the rates in Class A, in effect prior to July 1, 1908, were adequate or inadequate, or whether they were sufficient to provide for the current death losses in Class A, and the expenses of the society; or whether it was necessary, in order to prevent the insolvency of the Supreme Tribe of Ben-Hur, to create a new class, and induce the members of the old class, in so far as it was possible to induce them, to transfer to the new class, and the right of the society to take all action necessary for this purpose.

Other details of the reorganization are set forth, and it is averred that in the original suit it was finally determined and adjudged that the reorganization adopted by the Supreme Tribe of Ben-Hur was valid and binding upon all the members of the society, including the members known as Class A.

The ancillary bill alleges that the prosecution of the suits in the state courts of Indiana will have the effect to relitigate questions conclusively adjudicated against the defendants as members of Class A in the action in the United States District Court; that to permit them to do so would destroy the effect of the decree rendered in that suit; that in the several suits commenced in the state courts plaintiffs therein challenged the rights of the society to create Class B; and that the plan of reorganization of the society to create Class B, and the questions of fact and law involved in the causes in the state court are the same questions and none other than those conclusively adjudged and determined in the main suit.

The district judge dismissed the suit for want of jurisdiction upon the following certificate:

- "I hereby certify that I dismissed the ancillary bill of complaint in the above cause of the *Supreme Tribe of Ben-Hur* v. *Aurelia J. Cauble*, et al., solely because of the lack of jurisdiction of the United States District Court for the District of Indiana to entertain said ancillary bill of complaint.

"I dismissed said ancillary bill of complaint upon a motion filed by the defendants thereto and also upon my own motion.

"The jurisdictional question arose as follows:

"On April 16, 1913, George Balme, a citizen of the State of Kentucky, and five hundred and twenty-three other complainants residing in fifteen different states of the Union outside of the State of Indiana, and one complainant residing in the Dominion of Canada, filed their bill of complaint in the United States District Court for the District of Indiana against the Supreme Tribe of Ben-Hur, a fraternal beneficiary society organized under the laws of the State of Indiana with its principal office at Crawfordsville in said state and district aforesaid, and its officers, all citizens and residents of the State of In-

diana, to enjoin what was claimed to be an unlawful use
of trust funds of said defendant, Supreme Tribe of Ben-
Hur, in which all the complainants and other mem-
bers of Class A of said Supreme Tribe of Ben-Hur
had a common but indivisible interest, and attack-
ing a plan of reorganization adopted by the Supreme
legislative body of the Supreme Tribe of Ben-Hur
to prevent threatened insolvency and disruption of
said society; the suit was a class suit brought and
prosecuted for the benefit of all members of Class A
of said society of whom there were more than seventy·
thousand at the time of the commencement of said suit,
to wit, April 16, 1913; an answer was filed by the de-
fendants setting up a full answer to the facts averred in
the bill of complaint; a long hearing was had before the
Master, the Master filed a written report and in this .
report it was found that this was strictly a true class suit
presenting questions of common interest to all the members
of Class A and affecting their joint interests in funds and
in internal management of the society, written excep-
tions were filed thereto both by complainants and de-
fendants, and a final decree was entered dismissing com-
plainants' bill of complaint for want of equity, which
said decree has never been appealed from, modified or
vacated, but is still in full force and effect. No Indiana
members of the society intervened or were made parties
to the suit by any subsequent proceeding prior to the
filing of said ancillary bill in said cause.

"In 1919 the defendants to the ancillary bill, all being
residents of the State of Indiana, and all having been
members of said Class A of said Supreme Tribe of Ben-
Hur or being beneficiaries of persons who were members
of said Class A at the time of the commencement, prose-
cution and final decree in said cause of *Balme and others
v. Supreme Tribe of Ben-Hur and others,* commenced
actions in the Circuit Court of Montgomery County,

Indiana, and in the Circuit Court of Marion County, Indiana, in which they seek to relitigate questions determined in favor of the defendant, Supreme Tribe of Ben-Hur, in said suit brought by George Balme and others in the United States District Court for the District of Indiana.

"The ancillary bill of complaint filed herein seeks to enjoin the maintenance and prosecution of the actions commenced by said several defendants to the ancillary bill of complaint in the State Courts of Indiana, all of which actions were commenced subsequent to the final decree in said cause of *Balme and others* v. *The Supreme Tribe of Ben-Hur*, which final decree was entered and rendered on the 1st day of July, 1915.

"That a copy of said ancillary bill, together with the motion of the defendants thereto to dismiss the same, and the order of dismissal are contained in the judgment roll filed herein, to which reference is made for a more particular description thereof, and that there is attached to said ancillary bill contained in said judgment roll a full copy of all the pleadings and proceedings had in said cause of *Balme et al.* v. *The Supreme Tribe of Ben-Hur et al.*, together with the report and findings of the Master and the judgment and decree of the court.

"I dismissed the ancillary bill of complaint on the ground only that members of Class A of the Supreme Tribe of Ben-Hur residing in the State of Indiana could not be bound by representation by complainants in the class suit of *Balme et al.* v. *The Supreme Tribe of Ben-Hur et al.*, as the presence of such Indiana members of Class A as plaintiffs would have ousted the jurisdiction of the court in the main suit, such jurisdiction being based only on diversity of citizenship and not on any Federal question, and that therefore the decree in the main case was and is not *res adjudicata* as to Indiana members of Class A of the Supreme Tribe of Ben-Hur.

"The only question which arose on the dismissal of the ancillary bill of complaint was the question of jurisdiction, and such question of jurisdiction only, as above stated, is hereby certified to the Supreme Court of the United States for its decision thereon."

From this statement of the case it is apparent that two points are involved in determining the jurisdictional question before us: First. Was the original decree binding upon citizens of Indiana who were in the class for whom the suit was prosecuted, but not otherwise parties to the bill? Second. Was the present suit ancillary in character, and such as to justify an injunction in the federal court to restrain the proceedings in the state court?

Class suits have long been recognized in federal jurisprudence. In the leading case of *Smith* v. *Swormstedt,* 16 How. 288, 303, of such suits this court said: "Where the parties interested in the suit are numerous, their rights and liabilities are so subject to change and fluctuation by death or otherwise, that it would not be possible, without very great inconvenience, to make all of them parties, and would oftentimes prevent the prosecution of the suit to a hearing. For convenience, therefore, and to prevent a failure of justice, a court of equity permits a portion of the parties in interest to represent the entire body, and the decree binds all of them the same as if all were before the court. The legal and equitable rights and liabilities of all being before the court by representation, and especially where the subject-matter of the suit is common to all, there can be very little danger but that the interest of all will be properly protected and maintained."

The subject is provided for by Rule 38 of the Equity Rules of this court promulgated in 1912, which reads: "When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court,

one or more may sue or defend for the whole." As the rule formerly read it contained the following provision "but in such cases the decree shall be without prejudice to the rights and claims of the absent parties."

The District Court held that this change in the rule could not affect the jurisdictional authority of the court, and added, that in its view Rule 39 was the applicable one. Rule 39 provides: "In all cases where it shall appear to the court that persons, who might otherwise be deemed proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in its discretion, proceed in the cause without making such persons parties; and in such case the decree shall be without prejudice to the rights of the absent parties."

Under the latter rule the District Court held that the Indiana citizens were out of the jurisdiction of the federal court in the original suit, and that their joinder would have ousted the jurisdiction of the court, although that fact would not prevent the court from proceeding in the case to a decree without prejudice to their rights. "In other words," said the judge, "although the original bill was a class suit, the class did not include Indiana citizens."

That the persons in Class A of the society were so numerous that it would have been impossible to bring them all before the court, is apparent from a statement of the case. They numbered many thousands of persons, and resided in many different States of the Union. There was the requisite diversity of citizenship to justify the bringing of a class suit in the United States District Court for the District of Indiana. The court, therefore, properly acquired jurisdiction of the suit, and was authorized to proceed to a final decree.

The District Court held that in its view joinder of In-

diana citizens would have defeated jurisdiction in the federal court, which conclusion was necessarily decisive of the case.

In *Stewart* v. *Dunham*, 115 U. S. 61, a creditor's bill was filed in equity to set aside a conveyance of a stock of merchandise. The suit was removed from the state court to the Circuit Court of the United States on the ground of diversity of citizenship. After the cause was removed, co-claimants, citizens of the same State as were the defendants, were admitted into the suit. This, it was contended, prevented the court from proceeding to a decree, as it was without jurisdiction because the controversy became one not wholly between citizens of different States. Of this contention this court said (p. 64): "This, of course, could have furnished no objection to the removal of the cause from the State court, because at the time these parties had not been admitted to the cause; and their introduction afterwards as co-complainants did not oust the jurisdiction of the court, already lawfully acquired, as between the original parties. The right of the court to proceed to decree between the appellants and the new parties did not depend upon difference of citizenship; because, the bill having been filed by the original complainants on behalf of themselves and all other creditors choosing to come in and share the expenses of the litigation, the court, in exercising jurisdiction between the parties, could incidentally decree in favor of all other creditors coming in under the bill. Such a proceeding would be ancillary to the jurisdiction acquired between the original parties, and it would be merely a matter of form whether the new parties should come in as co-complainants, or before a master, under a decree ordering a reference to prove the claims of all persons entitled to the benefit of the decree. If the latter course had been adopted, no question of jurisdiction could have arisen. The adoption of the alternative is, in substance, the same thing."

This principle controls this case. The original suit was

a class suit brought by a large number of the class as representatives of all its membership.

The change in Rule 38 by the omission of the qualifying clause is significant. It is true that jurisdiction, not warranted by the Constitution and laws of the United States, cannot be conferred by a rule of court, but class suits were known before the adoption of our judicial system, and were in use in English chancery. Street's Federal Equity Practice, vol. 1, § 549.

The District Courts of the United States are courts of equity jurisdiction, with equity powers as broad as those of state courts. That a class suit of this nature might have been maintained in a state court, and would have been binding on all of the class, we can have no doubt. *Hartford Life Insurance Co.* v. *Ibs*, 237 U. S. 662, 672; *Royal Arcanum* v. *Green*, 237 U. S. 531.

Owing to the number of interested parties and the impossibility of bringing them all before the court, the original suit was peculiarly one which could only be prosecuted by a part of those interested suing for all in a representative suit. Diversity of citizenship gave the District Court jurisdiction. Indiana citizens were of the class represented; their rights were duly represented by those before the court. The intervention of the Indiana citizens in the suit would not have defeated the jurisdiction already acquired. *Stewart* v. *Dunham, supra.* Being thus represented, we think it must necessarily follow that their rights were concluded by the original decree.

Rule 38, as amended, was intended to apply to just such cases. Rule 39 does not apply to a subject already specifically covered in Rule 38. Of course, mere considerations of inconvenience cannot confer jurisdiction, but it is to be noted that if the Indiana citizens are not concluded by the decree, and all others in the class are, this unfortunate situation may result in the determination of the rights of most of the class by a decree rendered upon a theory which

may be repudiated in another forum as to a part of the same class.

If the federal courts are to have the jurisdiction in class suits to which they are obviously entitled, the decree when rendered must bind all of the class properly represented. The parties and the subject-matter are within the court's jurisdiction. It is impossible to name all of the class as parties, where, as here, its membership is too numerous to bring into court. The subject-matter included the control and disposition of the funds of a beneficial organization and was properly cognizable in a court of equity. The parties bringing the suit truly represented the interested class. If the decree is to be effective and conflicting judgments are to be avoided all of the class must be concluded by the decree.

As to the other question herein involved, holding, as we do, that the membership of Class A were concluded by the decree of the District Court, an ancillary bill may be prosecuted from the same court to protect the rights secured to all in the class by the decree rendered. *Looney* v. *Eastern Texas R. R. Co.*, 247 U. S. 214, and cases cited.

It follows that the decree of the District Court, dismissing the ancillary bill for want of jurisdiction, must be

*Reversed.*