**LUSTER et al. v. MARTIN et al.**
No. 4636.

Circuit Court of Appeals, Seventh Circuit.
April 7, 1932.

Rehearing Denied June 13, 1932.

Wm. D. Tatlow, of Springfield, Mo., and A. W. MacLeod, of Eau Claire, Wis., for appellants.

C. S. Babcock and Sidney W. Worthy, both of Chicago, Ill., and Roy P. Wilcox, of Eau Claire, Wis., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

Appellants, residents of Missouri, are executors of the estate of Frank C. Hermann, deceased. They appeal from an order appointing a receiver of an alleged trust fund, which constituted a part of the estate of the said Hermann, and which directs them to deliver to said receiver a sum equal to the trust fund and interest, namely $266,345.

The complaint in brief charged that: (1) In 1922, the Gillette Rubber Company, a Wisconsin corporation, became financially involved, and, on suit brought, Frank C. Hermann was appointed receiver and conducted its business as such receiver for over two years. (2) In 1924, pursuant to provisions of the Wisconsin statutes, steps were taken by representatives of the creditors, the stockholders, and the bondholders of said Gillette Rubber Company to reorganize the company, which steps finally resulted in 1925 in the formation of a new Wisconsin corporation known as the Gillette Tire & Rubber Company, which new company issued bonds, preferred stock, and common stock. (3) Under the plan submitted, the securities issued by the new company were to satisfy claimants and stockholders of the old company and to provide capital for the conduct of the business by the new company. (4) All of the common stock of the new company (100,000 shares) was to go to said Hermann, who was to pay into the treasury of the new company $280,000 in cash. (5) It was subsequently agreed between Hermann and certain stockholders of the old company, and such agreement became a part of the plan of reorganization, that the sum paid for common stock in the new company ($5.40 per share) was to be used by Hermann in purchasing and retiring preferred stock in the new company, excepting as to 40 cents per share, which was to be used in paying reorganization costs, expenses, etc. (6) Hermann received approximately $175,000 from a large number of stockholders of the old company who purchased stock in the new company and paid therefor $5.40 per share. (7) Hermann purchased preferred stock with the moneys thus received from the sale of such common stock, but did not retire the same. (8) Hermann became president and treasurer of the new company, and held the preferred stock which he purchased from the proceeds of the sale of the common stock, declared and paid dividends to himself thereon from the date of the organization of the new company in May, 1925, until March 1, 1929, when the preferred stock was retired by the company, paying Hermann the par value and accrued dividends thereon. (9) Hermann continued to act as president and treasurer until September, 1929. (10) Appellees did not learn until 1929 that the preferred stock acquired by Hermann had not been retired as provided when Hermann sold to the old stockholders common stock in the new company. (11) Hermann, in 1929, sold his entire interest in the new company and moved to Missouri. (12) Hermann was in feeble health. (13) He received from the sale of his stock, including preferred stock, over one-half million dollars. (14) Large sums belonging to Hermann were on deposit in the banks in Eau Claire, Wis.

Personal service was had on Hermann, who however died shortly thereafter, but not until an order was made by the state court and re-entered in the federal court (after the cause had been removed there upon application of Hermann) enjoining Hermann and his agents from disposing of or transferring any of the property or money described in the complaint, or any property into which any of said moneys may have been invested. Upon the death of Hermann, proceedings were had by appellees for the revival of the action and for service of the scire facias on the executors of the estate of Hermann. They appeared specially and moved to quash the writ, which motion was denied.

They thereupon filed a motion to dismiss on the grounds: (1) The court had no jurisdiction of the trust funds, since they did not have a situs in Wisconsin. (2) The property was in the possession of the Probate Court of Missouri, a court of competent and exclusive jurisdiction (being the first to take possession of the res), and therefore the District Court had no power to appoint a receiver or render a decree affecting said property. (3) No valid cause of action in equity was stated. (4) The right sought to be enforced belonged to the corporation, and no request had been made of the corporation to sue as required by Equity Rule 27, and as a corollary thereto, the corporation is an indispensable party. (5) The agreement to retire the preferred stock of the corporation was for the benefit of the corporation and not the stockholders; that if the corporation were made a party, the federal court would lose jurisdiction because diversity of citizenship would disappear. (6) The trust fund was not earmarked. (7)

If the complainants' bill is a class bill, it is deficient under Equity Rule 38, because a class bill of the stockholders in this instance would amount to the corporation's cause of action. (8) Assuming that each stockholder has a cause of action, it is one at law, and each has a several cause which cannot be consolidated in equity.

The motion was denied, and the court entered the order [1] from which appeal was taken.

The numerous reasons which appellants assign for dismissal of the complaint will be considered on the assumption that the facts stated in the complaint are true. We have examined the supporting and opposing affidavits and find in the statements of Mr. Catlin and Mr. Skamser, two disinterested parties, persuasive support of all of the allegations of the complaint, save the statement therein appearing that large sums of money made up of said trust funds were on deposit in banks in Eau Claire, Wis., and Chicago, Ill.

The first of the vexatious questions to be determined is whether the District Court, assuming it originally had jurisdiction of the suit and power to appoint a receiver to hold the alleged trust fund, retained such jurisdiction after the death of Hermann, who died a resident of Missouri.

The appellees rely on the statute (28 USCA § 778) as the basis for the contention that the jurisdiction of the District Court was continued upon service of the writ of scire facias upon the executors of Hermann. This statute provides:

"When either of the parties, whether plaintiff or petitioner or defendant, in any suit in any court of the United States, dies before final judgment, the executor or administrator of such deceased party may, in case the cause of action survives by law, prosecute or defend any such suit to final judgment. The defendant shall answer ac-

[1] "It is ordered by the court:
* :: * * * * * * *

"(3) That plaintiff's motion for a receiver of the fund mentioned in the bill of complaint be and is hereby allowed * * *; that Stanley Ryan * * * be and he is hereby appointed Receiver of said fund, upon filing herein his bond conditioned according to law in the sum of $100,000 with surety to be approved by the court; that defendants surrender and deliver to the receiver, upon his qualification, the sum of $266,345 being the amount of the original fund and interest thereon; that upon receipt of said amount the receiver file his additional bond of $200,000 conditioned according to law with surety to be approved by the court; that he hold said fund subject to the orders of the court and that he report his actions in the premises to the court for future direction and authority."

cordingly, and the court shall hear and determine the cause and render judgment for or against the executor or administrator, as the case may require. And if such executor or administrator, having been duly served with a scire facias from the office of the clerk of the court * * *.

"The provisions of this section shall apply to suits in equity and in admiralty as well as to suits at law, and the jurisdiction of all courts of the United States shall extend to and over executors and administrators of any party, who dies before final judgment or decree, appointed under the laws of any State or Territory of the United States, and such courts shall have jurisdiction within two years from the date of the death of the party to the suit to issue its scire facias to executors and administrators appointed in any State or Territory of the United States which may be served in any judicial district by the marshal thereof. No executor or administrator shall be made a party unless such service is made before final settlement and distribution of the estate of said deceased party to the suit."

Whether a pending action may be revived upon the death of either party depends primarily upon the laws of the jurisdiction in which the action was commenced. Baltimore & O. R. Co. v. Joy, 173 U. S. 226, 229, 19 S. Ct. 387, 43 L. Ed. 677; Martin v. Wabash R. Co. (C. C. A.) 142 F. 650, 6 Ann. Cas. 582; Portland Gold Mining Co. v. Stratton's Independence (D. C.) 196 F. 714.

Section 778, title 28, is expressly limited to instances where "the cause of action survives by law." As the cause of action in the instant case is predicated upon a breach of contract by the deceased, which breach of contract resulted in a property loss to the plaintiffs and other stockholders, as well as an unjust enrichment of the deceased, who stood as a trustee to the stockholders, the cause of action arising out of said breach survived. It survived at common law. 1 R. C. L. § 24. The Wisconsin statute (St. 1929, § 331.01) expressly provided for its survival. The Missouri statute did likewise. Section 98, Revised Statutes, 1929.

The 1921 amendment to section 778, title 28, extended the revival of actions against administrators and executors. The effect of this amendment is disclosed in the two cases of Lawrence v. Southern Pacific Co. (C. C.) 177 F. 547 (decided in the second circuit before the amendment), and Randall v. Proceeds of the Scranton (D. C.) 23 F.(2d) 843, 845. It was to extend the rights of ac-

tion which otherwise survived by law to cases against executors and administrators of a deceased party, who were appointed under the laws *of any state* that the amendment was enacted. Inasmuch as the laws of both Missouri and Wisconsin provide that suits for damages arising out of contract survive the death of either plaintiff or defendant, the condition precedent to the operation of section 778 is established. In other words, section 778 authorized the revival of the suit against Hermann's executors no matter in what state they were appointed. The case of Burrowes v. Goodman (C. C. A.) 50 F. (2d) 92, much relied upon by appellants, is clearly distinguishable on the ground that no suit was pending in that case when the party died. It was therefore not a case of revival of action under section 778.

We conclude, therefore, that the cause of action sued upon was one which survived Hermann's death, and could be and was revived by appellees.

That the facts set forth in the complaint state a good cause of action against Hermann in favor of some one is too plain for argument. It is likewise apparent from the facts alleged that Hermann should be charged as a trustee of the funds by him received from the stockholders, if such funds can be traced, and the rights of third parties have not intervened.

■ Equally clear is our conclusion that the cause of action for which relief is sought belonged to appellees as stockholders and not to the corporation, the Gillette Tire & Rubber Company.

We do not mean to hold that the corporation, as a third party beneficiary to such an agreement as Hermann and the stockholders entered into, may not (at least in Wisconsin, Sedgwick v. Blanchard, 164 Wis. 421, 160 N. W. 267) enforce its rights in a direct suit brought by it on said agreement. But appellees' cause of action was not traceable to nor dependent upon the company's cause of action. It arose out of an agreement which was entered into before the company was created, and was likewise independent of the rights of the company, and therefore enforceable, regardless of the company's consent, opposition, or indifference.

■ It follows, therefore, that the company is not an indispensable party to the suit which might be brought to enforce the cause of action. The company, no doubt, might be brought in as a party, but federal court jurisdiction may not be thus defeated through the addition of a party who may be a proper, but not an indispensable, party. Moreover, even though it were brought in as a party, the court would, because of the corporation's interests, align it with appellees, and the necessary diversity of citizenship to sustain federal court jurisdiction would exist. Mahon v. Guaranty T. & S. Deposit Co. (C. C. A.) 239 F. 266.

■ Nor can it be said that the stockholders' causes of action are several and enforceable only by a single stockholder in an action at law. The stockholders were numerous. Their interests were common. It was difficult and inconvenient to make all of them parties. The suit was one for the establishment of a trust. The necessary fact situation was therefore present to support a class suit. 20 R. C. L. 670; Equity Rule 38; Supreme Tribe of Ben-Hur v. Cauble, 255 U. S. 356, 41 S. Ct. 338, 65 L. Ed. 673.

Upon the facts stated, appellees were entitled to have the court declare the trust and then grant such additional and auxiliary redress as was necessary to make effective the relief sought by the establishment of the trust. Pomeroy, Equity Jurisprudence (4th Ed.) § 1058.

■ Assuming, as we do, that, upon Hermann's acquiring the preferred stock in his own name instead of retiring it, a constructive trust for the benefit of the common stockholders arose, the court could follow the moneys realized by Hermann from the disposition of this stock, so long as the rights of innocent third parties had not intervened and the fund still existed, even though the fund were not earmarked. Central National Bank v. Connecticut Mut. L. Insurance Co., 104 U. S. 54, 66, 26 L. Ed. 693; 20 R. C. L. 1353. In the Central National Bank Case, the court said, quoting from Lord Justice Turner, Pennell v. Deffell, 4 De G., M. & G. 372, 388: "'It is, I apprehend, an undoubted principle of this court, that as between cestui que trust and trustee and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or in its altered state, continues to be subject to or affected by the trust.'"

■ The propriety of appointing a receiver is apparent and is authorized under the general power of the court to grant the auxiliary

relief necessary to the apportionment and distribution of the fund which equitably belonged to the stockholders. Nor can we ignore the asserted danger of Hermann's transferring this money to innocent third parties whose rights would impair, if not defeat, the beneficiaries' rights and remedies. It is immaterial whether the officer thus appointed be called a receiver or a special master. His appointment was necessary to the complete realization of the remedy which the beneficiaries of the trust possessed upon the facts disclosed.

Likewise, we see no justification for a clash of jurisdiction between the United States District Court for the Western District of Wisconsin and the Probate Court of Greene County, Mo. The latter court has jurisdiction of the estate of the deceased Hermann. The estate which was being administered could not be increased by the exercise of the Probate Court's jurisdiction. The executors succeeded to the estate of the deceased Hermann. That estate was subject to certain liens, among them being the burden of the trust in favor of the stockholders.

Section 778, title 28, USCA, is in itself an indirect recognition of appellees' position. For if an action may be continued against the executors, it follows that the executors took the estate subject to such relief as might be rightly directed in the suit pending against the said deceased party when he died. Numerous cases cited by counsel on the question of conflicting jurisdiction and the holdings which recognize the priority of the rights of a receiver appointed by a court which first assumes jurisdiction over the res have no bearing here for the reason that the estate, which was brought into the jurisdiction of the Greene County Court, was already impressed with the trust in favor of the stockholders.

This disposition of the appeal, it is needless to add, is based upon the facts presented by the record before us. The appeal is from an interlocutory order made upon a showing by affidavits. The trial on the merits may change the fact situation so as to necessitate new and different findings respecting the agreement made by Hermann with the stockholders when they purchased the common stock. Nothing said in this opinion is intended to foreclose the full presentation and determination of that issue upon the trial.

The order is affirmed.