### PARTRIDGE et al. v. MARTIN et al.
### (two cases).
### Nos. 11184, 11297.

Circuit Court of Appeals, Eighth Circuit.
March 6, 1939.

Rehearing Denied March 23, 1939.

Staunton E. Boudreau, of St. Louis, Mo. (John L. Gilmore and John B. Kramer, both of St. Louis, Mo., on the brief), for appellants.

Jacob M. Lashly, of St. Louis, Mo. (Arthur V. Lashly and Arnot L. Sheppard, both of St. Louis, Mo., on the brief), for appellees.

Before STONE, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

The Federal Farm Loan Act (12 U. S.C.A. § 641 et seq.) imposes superadded liability to creditors upon the shareholders of joint stock land banks (12 U.S.C.A. § 812 [1]), but fails to vest the right to sue for the amount of such liability in any public or court officer. Such right to sue is left to creditors who chose to assert it. Wheel-

[1] "Shareholders of every joint-stock land bank organized under this chapter shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such bank to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares."

er v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L.Ed. 160.

The St. Louis Joint Stock Land Bank is insolvent and different suits have been brought to enforce the shareholders' liability, those relevant here being a suit brought by Partridge on June 6, 1932, and a suit, No. 10174, brought November 17, 1932, by Ball et al., called the Ball suit. The controversies presented by these two appeals are between the parties who are prosecuting such suits, C. E. Partridge (in whose name his successor in interest prosecutes) and intervenor V. A. Hall being the appellants, and William W. Martin and others constituting a bondholders' committee, and four others identified with them being the appellees. Three orders affecting the parties to the appeals, dated respectively November 17, 1937, December 13, 1937, and June 16, 1938, are sought to be reviewed. Each of the orders denied injunction against appellees. The appeals are consolidated and heard together. The appellees have moved to dismiss the appeals and have also briefed and argued the merits.

It appears that the St. Louis Joint Stock Land Bank defaulted in interest payments on its bonds, was declared insolvent and its assets were placed in receiver's hands on the first day of June, 1932. On June 6th, 1932, C. E. Partridge, claiming to be a creditor of the bank in the aggregate amount of four thousand dollars, brought suit in the federal court of the domicile of the bank on behalf of himself and all other creditors, to recover the superadded liability from the shareholders. He alleged that the debts exceeded the assets by approximately $8,000,000; that the subscribed, issued and paid for outstanding capital stock amounted to $1,430,000, and that the shareholders were indebted under the statute (Section 812, supra) in that amount. Eleven of the principal shareholders were named as individual defendants and as class representatives of all other shareholders. On application made therefor, the court entered an order (discussed by this court in Martin v. Partridge, 8 Cir., 64 F.2d 591), appointing a trustee-receiver in the suit.

On September 3, 1932, the complainant filed an amendment to the original bill and on April 3, 1933, filed an "Amended and Supplemental Bill of Complaint." The supplemental bill proceeded against the 20 individual stockholders named in the original bill and the amendment thereto, several corporate defendants including the Land Bank Securities Company, and also named some 200 individual stockholders in the body of the complaint, but the latter were not served with process. It charged, among other things, that certain of the shareholders and directors of the St. Louis Bank had attempted to organize the Land Bank Securities Company under the laws of the State of Delaware for the fraudulent purpose, among others, of escaping their statutory liability for any assessment which might be made against the shareholders of the Land Bank; that these shareholders had transferred their shares of stock in the St. Louis Joint Stock Land Bank for interim receipts issued in exchange therefor by said Delaware corporation; that the latter did not qualify to do business in the State of Missouri and was promoted, incorporated, and organized in fraud upon the laws of both the state of Missouri and Delaware and in order to accomplish a fraud against the creditors of the St. Louis Joint Stock Land Bank; and "that complainant is entitled to the judgment of this court against defendants W. Palmer Clarkson, E. D. Nims, Rhodes E. Cave, Benjamin Lang, William Danforth, Leslie Dana, C. L. Harrison, Lewis T. Tune jointly and severally for the sum of $950,000.00 with interest." Upon a motion made by the above named defendants presenting that the bill did not state facts justifying this relief, the district court issued its order dismissing so much of the complaint "as seeks an assessment against the defendants jointly", without prejudice to the complainant's claim to an assessment against each individually and severally. From this order the complainant prosecuted an appeal to this court which proved unavailing as this court held that the order was not an appealable one and dismissed the appeal. Partridge v. Clarkson, 8 Cir., 72 F.2d 108. On March 16, 1937, V. A. Hall, creditor to the amount of $6,000, intervened as party complainant.

On April 27, 1937, the complainants filed their "Second Amended Bill of Complaint" extending over 134 pages of the printed record. Its general nature remains the same as the original bill and amendments thereto above described. The complainants state that process was served upon substantially all defendants not pre-

viously served. Paragraphs 23, 24 and 24½, comprising some 24 pages of the bill, are of particular pertinence to this appeal. In substance the complainants reallege that prior to the year 1932, certain of the defendant directors and officers of the St. Louis Joint Stock Land Bank, most of whom are designated by name as defendants in the Clarkson case, supra, conceived and entered into the execution of a plan to accomplish an avoidance of payment of their personal liabilities to the bank's creditors with knowledge that the bank's insolvency was imminent. The bill then sets forth allegations concerning the organization by said defendants of the Land Bank Securities Company, the transfer of their shares in the St. Louis Bank to it and charges them with joint and several liability by virtue of the joint ownership of 10,-076 shares of stock of the St. Louis Joint Stock Land Bank held by them under the fictitious business name of the Land Bank Securities Company. It also alleges that said defendants set up or caused to be set up a Bondholders' Protective Committee, with E. D. Nims, one of their number, as chairman and Rhodes E. Cave, another, as counsel; that this committee without disclosing the relations of its various members to the St. Louis Land Bank, induced a large part of the bondholders to commit the protection and enforcement of their rights to it; that it has conducted the defense to this bill on behalf of most of the defending shareholders; that promptly after the complainants had charged the organizers of the Land Bank Securities Company with joint liability, E. D. Nims and Rhodes E. Cave resigned and the committee was reorganized with the appellees herein comprising its personnel; that this show of purging the committee of the influence of the defendants was colorable merely; that the appellees have continued to employ the practices of the original committee in an effort to delay, obstruct and interfere with the prosecution of the appellants' suit and to defeat the rights of the creditors of the bank; that pursuant to this plan, they filed the suit in the federal court of the domicile of the bank entitled Ball v. St. Louis Joint Stock Land Bank, to enforce the liability of the shareholders of defendant St. Louis Bank to which the District Court sustained a plea of abatement on September 25, 1936; that thereupon the appellees, as a committee, filed a suit in the Eastern Judicial District of Illinois in an attempt to have the extent of the shareholders ratable liability determined there; that these suits did not charge any of the defendants with joint ownership of the 10,076 shares but charged them as owners individually; that by the Illinois suit the defendants will effect a discharge with payment of an amount less than the proper part of their obligations to the creditors of the St. Louis Bank. The bill includes a prayer that the defendant directors and the appellees be enjoined from interfering with the prosecution of this cause and particularly from prosecuting further the above suit of Ball v. St. Louis Joint Stock Land Bank and the suit in the Eastern District of Illinois and like suits elsewhere and that they be ordered to dismiss all their suits for recovery of shareholder liability.

An order to show cause against issuance of temporary injunction having been issued on application in aid of the second amended bill of complaint, the members of the bondholders' committee made elaborate return extending over thirty eight pages of the record. They disputed the claim of Partridge to be a bondholder, denied any breach of fiduciary obligation on their part or any conflict of interest between any of the trustees and the beneficiaries of the trust and denied that they had or would interfere with or hinder the prosecution of appellants' suit. But they alleged that appellants had brought their suit upon an untenable theory attempting to obtain adjudication against absent shareholders as members of a class, and they had failed to obtain service under their bill upon the main body of the shareholders in Missouri; had failed to sue shareholders owning large amounts of stock who lived in and were suable only in other states; had permitted their suit to pend without progress or results more than five years from 1932 to 1937 and that it remained futile in its pendency and that by reason of appellants' negligence and lack of diligence the creditors of the bank had already suffered and inevitably would suffer loss of their rights under the shareholders' liability statute from deaths, insolvencies and delays, and that it was necessary for the committee to attempt to enforce the liability. That it had accordingly brought the needful suits in many states and had pressed them diligently and successfully and had made substantial recoveries and collections for the creditors.

On November 17, 1937, the trial court entered an order sustaining the motion of the appellees to dismiss the second amended bill of complaint as to them on the ground that said bill did not state facts sufficient to justify any relief against them. The first of these appeals, .No. 11184, is taken to review this order, but is based solely upon the court's denial of an interlocutory injunction as effected by the order and no question as to the merits of the claims asserted for recovery of money judgments is involved in the appeal.

On December 13, 1937, the court issued its order denying leave to complainants to file an "Amendment of Complainants' Second Amended Bill and Supplemental Bill" as against the appellees alone. The amendment substantially realleges the facts set out in the second amended bill and the court stated that the amendment and supplemental bill sought to reopen a matter that had already been determined and denied leave to file. The first of these appeals, No. 11184, seeks review of this order as well as of the above order of November 17, 1937, but as to this order the appeal is likewise restricted to the denial of interlocutory injunction thereby effected.

Turning now to cause No. 10174, called the Ball suit, brought on November 18, 1932, some five months later than the Partridge suit. A copy of the bill of complaint in the Ball suit is included in the record and is properly to be considered. It shows that the complainants therein named were trustee creditors constituting a bondholders' committee and that they were suing on behalf of themselves and all other creditors to establish and recover the superadded liability due from all shareholders of the insolvent St. Louis Joint Stock Land Bank. It includes all defendants theretofore named in this suit and some 169 additional shareholders, all of whom were duly served with process. As to shareholders named defendants but not served with process who reside mainly in other states, it was alleged that they were sued as a class liable to the extent of their individual shareholdings. It was also alleged that the transfer of shares to the Land Bank Securities Company made by certain defendants was void and that the transfer did not relieve the transferrers of their respective several liabilities. On January 5, 1933, the defendants in the Ball suit filed a motion to dismiss and also a plea in abatement. On June 6, 1936, this motion was sustained on the ground that

the Ball suit was unnecessary as the purpose and scope of the Partridge action, previously filed, was the same, in behalf of the same interests and the decree in the Partridge suit would be binding on all creditors, including the plaintiffs in the Ball suit. Thereupon the court ordered the action suspended until the final termination of the prior proceeding.

On March 12, 1938, the Bondholders' Committee, as plaintiffs in the Ball suit, filed their petition to set aside this order of abatement. The motion set forth that only 19 defendants common to the two actions had been served with process by the complainants in the Partridge action and that except as to those so served the plaintiffs in the Ball suit were entitled to proceed against all other parties defendant since each suit is an action in personam and the judgment of recovery would be binding only upon the persons sued and served under the decision in the case of Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388.

On May 2, 1938, the court vacated its order of abatement and reinstated the cause of Ball v. St. Louis Joint Stock Land Bank on the docket.

On May 27, 1938, the complainants in this Partridge suit, appellants herein, filed in this suit "Suggestion and Motion to Dismiss [the Ball suit] and Application for Injunction against [the Ball suit's] Further Maintenance", extending over some forty pages of the record. It recites proceedings had in both the Partridge and Ball suits, alleges breaches of fiduciary relationship on the part of members of the bondholders' committee and the committee's unfitness to conduct the suit against shareholders; also that the court in entertaining jurisdiction in the Ball suit was adversely prejudging the subject matter previously submitted to it and adjudicated in this suit.

On June 16, 1938, the court denied the motion, assigning the reason that the issues raised were then pending on appeal in .this court. Partridge v. Clarkson, supra, was then pending in this court, but the particular question of the right to an interlocutory injunction against the maintenance of the Ball suit does not appear to have been directly involved and was not discussed by the court. The second of the appeals, No. 11297, is taken to review this order of June 16, 1938, and is also restricted to the denial of the interlocutory injunction.

288

### The Merits.

The position of the appellants Partridge and Hall is that when they instituted their suit five days after the bank's insolvency "the entire joint right (of the creditors) was put in suit and must be litigated in this suit exclusively". The matter in issue determinative of the appeals is their claim that they had secured the exclusive right to sue shareholders and were entitled to the injunction against maintenance or bringing of suits by others which the court denied them.

None of the cases cited to us establishes that one creditor out of a great number acquires such absolute right to injunction against action by all other creditors through the mere starting of a suit for recovery of money and alleging that it is brought on behalf of all creditors. There is no binding analogy in those cases where a fund or specific property has been drawn within the court's jurisdiction for equitable liquidation or disposition, nor in those cases where a class suit has proceeded to a final judgment that is binding on absentees. Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673. Here the suit is merely to recover money judgment. Ordinarily such a suit as the present properly brought and diligently prosecuted will be welcomed and availed of by all creditors situated similarly with the plaintiffs. They will by intervention or otherwise co-operate to the common end of making the shareholders pay. Or if such suits have been brought by different creditors, they will be consolidated. There are numberless instances of such orderly and successful procedure.

▮ But we need not in these appeals decide the abstract question as to the right to injunction which might arise in some cases. We think it clear that in the present case there was no such right. Certainly as to the shareholders living in other states no adjudication could have been obtained in this case which would be binding upon them. Christopher v. Brusselback, 302 U.S. 500, 58 S.Ct. 350, 82 L.Ed. 388; Holmberg v. Carr, 2 Cir., 86 F.2d 727. It is equally clear that no adjudication could have been obtained herein prior to the institution of the Ball suit which would have been binding upon the great body of shareholders resident in Missouri but not served with summons under the bill of complaint herein. Christopher v. Brusselback, supra. Furthermore, the complainants in

this suit did not confine themselves to an attempt to recover from the individual shareholders "equally and ratably and not one for another to the extent of the amount of stock owned by them," but sued upon confused and inconsistent theories, as we pointed out in Partridge v. Clarkson, supra, page 110.

▮ The deviated, distracted and unsuccessful course of this case over the years since 1932 compelled the conclusion of the district court that creditors would have little hope for recovery if they were confined to it. Nor could the court ignore the slender thread of appellants' interest. The debts of the bank aggregated more than eighteen million dollars and the utmost dividend they could possibly gain would not exceed a few hundred dollars on the total ten thousand dollar debt they claim to own. It was well within the court's discretion and his duty to permit those who represented vast indebtedness, amounting to some fourteen millions of dollars, to proceed in other actions which afforded better hopes for them. The obvious and applicable considerations to justify such action are well stated in Dresdner v. Goldman Sachs Trading Corp., 240 App.Div. 242, 269 N.Y.S. 360.

Many contentions are presented and argued in the voluminous briefs, but as we think the court exercised sound discretion in refusing to accord the appellants an exclusive right to sue on the shareholders' liability and in denying them an injunction, the orders complained of are affirmed. Ruling on the motions to dismiss is unnecessary.

Affirmed at appellants' costs.