JOHNSON et al. v. MIDDLETON.

No. 9725.

United States Court of Appeals
Seventh Circuit.

June 30, 1949.

536

Christopher C. Wimbish, and George N. Leighton, Chicago, Ill., for appellant.

Paul N. Dale, and Arthur S. Lytton, Chicago, Ill., Edmund W. Burke, Chicago, Ill., Burke, James & Burke, Chicago, Ill., and Dale, Lytton, Haffner & Grow, Chicago, Ill., for appellees.

Before KERNER and DUFFY, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Appellants, plaintiffs in a representative action for a declaratory judgment to determine their rights and interests in a certain parcel of real estate, appeal from the dismissal of their action on defendants' motion asserting failure to state a claim on which relief could be granted, predicated on res judicata and absence of diversity of citizenship.

The complaint was filed in the name of sixteen individuals in their own behalf and "on behalf of all those citizens of the States of Indiana, Missouri, Arkansas, Tennessee, Kentucky, Michigan, Oklahoma, and Ohio, similarly situated." It named various defendants both individual and corporate: Three Pennsylvania residents, individually and as members of the Board of Directors of an Illinois corporation, the Kankakee Shores Association of the Methodist Church; two Illinois residents individually and as officers of the Kankakee Chamber of Commerce; the Division of Home Missions and Church Extensions of the Methodist Church, a New York corporation; and the Chicago Title and Trust Company, an Illinois corporation.

The controversy relates to a parcel of real estate known as the Heiland Estate, a 1,550 acre tract located near Kankakee, Illinois, purchased in March, 1947, in the name of the Kankakee Shores Association, for educational and recreational purposes, a home for aged ministers, and other related uses. The project was initiated by Edward Kelly, Negro Bishop of the St. Louis Area having jurisdiction over all Negro members of the Methodist Church in the seventeen states comprising that area. According to the complaint, during the summer of 1945, B. F. Neal, a minister of the Methodist Church, "asked plaintiffs to contribute money for the purpose of their becoming owners of and as an investment in a real estate project * * *" As a result of the solicitation among members throughout many states approximately $100,000 was collected. This money was used to obtain an option for the purchase, and an additional $25,000 alleged to belong to plaintiffs was paid. The balance of $225,000 to complete the purchase was borrowed from defendant, the Home Mission Board, on the condition that title would be taken in the name of the Kankakee Shores Association of the Methodist Church, an Illinois corporation not for profit. The Home Board also required that it be allowed to choose three of the members of the Board of Directors. The purchase was duly completed and the property conveyed to Kankakee Shores on March 31, 1947, subject to a mortgage to secure the loan of the Home Board, and plaintiffs went into possession and began using the property for the corporate purposes.

The complaint charges that after plaintiffs began to use the property, the Chamber of Commerce defendants represented to the Home Board and the three Kankakee Shores defendants that the citizens of Kankakee objected to the use of the property by Negroes and that unless it was sold, condemnation proceedings would be instituted, and that thereafter, although the directors of Kankakee Shores were under a duty not to do any act which would in any way destroy plaintiffs' interest in the property, they entered into negotiations to sell it, thereby threatening plaintiffs' interest which could not be compensated by a return of the money paid. Plaintiffs prayed a temporary injunction to prevent sale of the property pending determination of their rights therein, and a declaratory judgment "fixing, determining and declaring the rights, liabilities, duties, responsibilities, and legal relations of the parties hereto."

They also prayed a mandatory injunction ordering the defendants to execute such releases and cancellations as might be found necessary to remove all threats to their interests in the property, and a money judgment against each defendant in the amount of $50,000 as punitive damages "by way of example for the malicious wrongs of the defendants."

Defendants moved to dismiss the complaint and amended complaint on the grounds of res judicata and absence of diversity of citizenship. In reply, plaintiffs denied both grounds, attaching to their reply as exhibits, copies of the pleadings and decree in a suit filed by a group of Illinois residents in the Circuit Court of Cook County.[1] Thereafter, Bishop Kelly was granted leave to intervene as a party defendant and he filed answer to the amended complaint. The motion for temporary injunction was denied, and defendants' motion to dismiss sustained; plaintiffs' motion to vacate these orders and for leave to file an amended complaint was likewise denied, and from all of these orders the appeal was taken.

Appellees' assertion of absence of diversity of citizenship was based on the fact that the plaintiffs, limited to residents of certain named states, did not truly represent the entire class of persons interested in the property, and that the many Illinois residents who participated in the development of the project belong to the same class and are necessary and indispensable parties whose inclusion in the suit would destroy diversity.

■■ Decisions have been very liberal in permitting parties to make studied effort to name parties over whom the court will have jurisdiction, so long as it does not appear that the action is a collusive one to confer such jurisdiction upon a federal court which would otherwise not have it, and so long as the rights of other parties not represented will not be jeopardized by the ad-

judication. Of course all persons having conflicting claims to a particular fund are indispensable parties to its disposition. Brown v. Christman, 75 U.S.App.D.C. 203, 126 F.2d 625, 631. However, since it appears here that plaintiffs are seeking to save the property itself by preventing its sale rather than trying to obtain the proceeds of such sale, we think they may well argue that there is no such conflict of interest as would require the inclusion of all contributors to the fund with which the property was bought.

■■ Conceding, then, at least for purposes of this argument, that appellants were entitled under the Federal Rules and decisions to designate themselves as they did, making studied effort to omit all who would extinguish diversity if included, we are of the opinion that a much more serious question is disclosed by the pleadings. This question is whether Bishop Kelly was an indispensable party to the action. If so, of course, the court had no jurisdiction over the action without him. He was brought into it by his own motion for leave to intervene. Ordinarily, an intervenor must accept the proceeding as he finds it at the time of his intervention, and his inclusion after jurisdiction has been established does not oust such jurisdiction. Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673. However, this is not true where the intervenor is in fact an indispensable party without whom the action could not have proceeded. It seems clear that if his inclusion is essential to confer jurisdiction over the proceeding, then where jurisdiction depends upon diversity of citizenship, if his citizenship is the same as that of one of the adverse parties, his inclusion in the proceeding must prevent jurisdiction from vesting by extinguishing the requisite diversity. Here, Bishop Kelly is a resident of Missouri, as are the members of one group of plaintiffs. Hence, if he was in

---

[1] This suit was not filed as a class suit, and it originally sought relief somewhat similar to that sought by the complaint at bar, namely, an injunction to prevent sale of the property. It was subsequently amended to include as parties plaintiff all others similarly situated, and to permit consummation of the sale and reim- bursement out of the proceeds insofar as that was possible to the various contributors and lenders who appeared in person or by representative in the suit. Judgment to that effect was rendered May 24, 1948, by the Circuit Court of Cook County, Illinois, about two weeks after filing of the suit at bar on May 7, 1948.

538

fact an indispensable party to the proceeding, the District Court rightly dismissed the action.

 In his answer, Bishop Kelly stated that his jurisdiction as Bishop of the St. Louis Area extended over all Negro members of the Methodist Church in seventeen states; that Kankakee Shores was organized under the Illinois laws for religious and social purposes as an instrumentality of the St. Louis Area, and that all gifts and donations made by the parties named or represented were made to him as such for use in his work and became subject to his control and jurisdiction in accordance with the customs and usages of the Church, and that he was fully empowered to merge all moneys so received and to use them as in his discretion seemed most advisable for promoting the religious and social work in the Area. It also appears from the Articles of Incorporation of Kankakee Shores which were filed as an exhibit to some of the pleadings, that the purpose for which it was organized was to constitute an instrumentality of the St. Louis Area of the Central Jurisdiction of the Methodist Church, and as such instrumentality to promote and foster the spiritual and temporal programs of the Church in the Area, to provide and conduct a program and facilities for religious, moral, recreational and intellectual development, to operate schools for religious education, to provide homes for aged, sick, and other dependent people, and to do each and everything incidental to and in furtherance of the foregoing and permitted by the laws of the State of Illinois to be done by a corporation not for profit.

While it is difficult to define the position of Bishop Kelly precisely, we are convinced that under the circumstances disclosed by this record, his relationship to the parties and to the property is such that there could be no final disposition of the proceedings without him, under the tests laid down in State of Washington v. United States, 9 Cir., 87 F.2d 421. See also Brown v. Christman, supra; Calcote v. Texas Pacific Co., 5 Cir., 157 F.2d 216, 167 A.L.R. 413. Hence he was an indispensable party, and when he became a party defendant, the diversity of citizenship upon which the juris-

diction of the federal court depended failed.

Appellants contend that jurisdiction was not based solely on diversity, but that in their amended complaint they also invoked R.S. §§ 1977, 1978, and 1979, 8 U.S.C.A. §§ 41 to 43, for the protection of their rights as Negroes to own and occupy land, citing Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161, 3 A.L.R.2d 441, which involved the question of restrictive covenants. Here we have no issues revolving upon restrictive covenants. It is not in point. Our examination of the amended complaint discloses insufficient allegations to support a charge of violation of the statutes relied upon, hence we find no merit in this contention.

Affirmed.