Fred W. INGERSOLL et al., Plaintiff,

v.

BROTHERHOOD OF LOCOMOTIVE EN-GINEERS et al., Defendants and Third-Party-Plaintiffs,

v.

BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, Third-Party-Defendants.

Civ. No. 35292.

United States District Court
N. D. Ohio, E. D.
March 13, 1961.

Chester K. Gillespie, Cleveland, Ohio, and Joseph C. Waddy, Washington, D. C., for plaintiffs.

Harold N. McLaughlin and John H. Ritter, of Marshman, Hornbeck, Hollington, Steadman & McLaughlin, Cleveland, Ohio, for defendant Brotherhood of Locomotive Engineers.

Edwin Knachel and John G. Cardinal, of Marshman, Hornbeck, Hollington, Steadman & McLaughlin, Cleveland, Ohio, for defendant Nickel Plate.

Harold C. Heiss and Russell B. Day, Cleveland, Ohio, for defendant Brotherhood of Firemen & Enginemen.

CONNELL, Chief Judge.

This is an action for declaratory judgment, injunction and damages, arising under the Railway Labor Act, 48 Stat. 1185, 45 U.S.C. § 151, 45 U.S.C.A. § 151, instituted against the Brotherhood of Locomotive Engineers and the New York, Chicago & St. Louis Railroad Company. The defendants have in turn impleaded the Brotherhood of Locomotive Firemen and Enginemen, and have jointly moved this Court for a summary judgment. For purposes of this motion, all of the defendants will be designated simply as defendants. The plaintiffs assert that they are adult citizens of the United States employed in interstate commerce by the New York, Chicago & St. Louis Railroad Company (hereinafter called the Nickel Plate) as engineers on the Sandusky Division of the Lake Erie and Western District of the Nickel Plate, and that they are members of the craft or class of engineers employed by the Nickel Plate. Plaintiffs further assert that they are suing in their individual capacities for wrongs inflicted upon their individual rights, and as representatives of all the engineers employed on the Sandusky Division of the Nickel Plate, the engineers constituting a class too numerous to be brought individually before the Court. For purposes of this motion, we shall treat the action as a proper class action within the meaning of Fed.Rules Civ. Proc. Rules 23, 28 U.S.C.A., no objections having been raised by the defendants.

To fully understand the nature of the rights asserted by plaintiffs, it is necessary to review certain of the events that preceded the filing of this action. The Nickel Plate, as presently constituted, resulted from the consolidation and merger of several independently operated railroads. One of these railroads was the old Nickel Plate which obtained control of the Lake Erie and Western Railroad sometime after 1923. The track of the former Lake Erie and Western is now an operating district of the Nickel Plate, and is known as the Lake Erie and Western District. A third road was the Toledo St. Louis & Western Railroad, over which the Nickel Plate acquired control in 1923. This line is now an operating district of the Nickel Plate known as the Clover Leaf District, and is divided into two seniority districts, the Toledo Division and the St. Louis Division. By the same token, the Lake Erie and Western District is composed of four seniority districts, two of which (The Sandusky Division and the Peoria Division) are involved in the present dispute. As indicated earlier, the plaintiffs and the class of engineers they purport to represent in this action have employment rights on

the Sandusky Division of the Lake Erie and Western District.[1]

Early in 1933, the Nickel Plate made a significant operating change in an attempt to increase its operating efficiency. While the details of this change are not important, suffice it to say that there resulted a diversion of work from the Clover Leaf District (Toledo Division) and Peoria Division to the Sandusky Division, with the corresponding loss and gain of employment caused by this diversion. In order to protect the engineers and firemen with employment rights in the diverted districts from bearing the full loss of employment, the three defendants entered into an agreement, on June 4, 1933, whereby the Clover Leaf District and the Peoria Division were allowed to hold a certain number of jobs in the re-defined Sandusky Division. The basic grievance, then, upon which this action is predicated, is the fact that a certain number of Clover Leaf District and Peoria Division engineers have been, and are now, permitted to hold jobs on the Sandusky Division of the Lake Erie and Western District. Plaintiffs lay claim to the exclusive seniority and promotion rights available to locomotive engineers in their division, and say that insofar as engineers from the other districts and divisions who were hired after June 3, 1933 are allowed to continue to hold jobs on the Sandusky Division, the plaintiffs are being discriminated against in the enforcement of their asserted exclusive seniority and promotional rights.

On June 22, 1955, the defendant Brotherhood of Locomotive Engineers entered into an agreement, to be effective July 1, 1955, which would have removed all Clover Leaf and Peoria engineers operating in the Sandusky Division whose seniority rights were subsequent to June 3, 1933, and would have replaced them with engineers whose seniority rights were in the Sandusky Division. The plaintiffs claim that this agreement, if it had been enforced, would have eliminated the pre-existing discrimination against the plaintiffs, and would have allowed them to exercise their seniority in accordance with the uniform practices and policies applicable to all other members of the craft employed on the Nickel Plate. However, this 1955 agreement was never put into effect by the Nickel Plate or attempted to be enforced by the Brotherhood of Locomotive Engineers.[2] Instead, negotiations were entered into by the two crafts and the Nickel Plate, and the agreement of August 22, 1957 was settled upon, whereby it was determined that engineers whose seniority rights existed in seniority districts other than Sandusky, and who held seniority dates after November 1, 1955, would not be permitted to hold jobs on the Sandusky Division. This agreement, which will ultimately vest in the Sandusky engineers all of the jobs in the Sandusky Division, was apparently satisfactory to the Nickel Plate, both brotherhoods, and the majority of the members of both crafts as a fair and impartial resolution of the problems created by the 1933 operational changes on the Nickel Plate.

The defendants have moved for a summary judgment, basing their motion on three separate grounds: a) res judicata; b) lack of standing to sue on the

---

1. It should be noted that although the Nickel Plate is divided into many seniority districts, all the engineers employed on the Nickel Plate comprise one craft of employees for the purposes of the Railway Labor Act, and the designated representative of this craft is the Brotherhood of Locomotive Engineers. Similarly, all of the firemen employed on the Nickel Plate comprise one craft of employees, and this craft is represented by the Brotherhood of Locomotive Firemen and Enginemen.

2. The briefs of the parties indicate that the primary reason this agreement was not carried into operation was the threat of strike by the Brotherhood of Locomotive Firemen & Enginemen, which was concerned with the effect the agreement would have on the employment rights of certain members of its craft employed in the Peoria Division and Clover Leaf District, in that the engineers whose jobs in the Sandusky Division were terminated would "bump" the engineers and firemen in the diverted districts who had less seniority.

part of the plaintiffs, and; c) the statute of limitations. Defendants additionally have filed in support of their motion various affidavits, judicial opinions, and other extraneous matters. We consider these as a proper part of the matter to be considered in reaching a decision, for the very purpose of the summary judgment procedure is to pierce the fact allegations of the pleadings in an attempt to determine whether there exists a material issue of fact, or whether the moving party is entitled to judgment as a matter of law. See 6 Moore's Federal Practice (2d ed.) 2053; Cyclopedia of Federal Procedure (3d ed.) § 15.658.

As indicated in the résumé of facts leading up to this present action, plaintiffs have brought this action individually and on behalf of all other members of their craft who have seniority rights in the Sandusky Division, asserting that the class is too numerous to be brought individually before the Court, that common questions of law and fact are involved, and that the interests of the class are fairly and adequately represented by the named plaintiffs. For purposes of this motion, the action will be treated as a legitimate class action, the class consisting of all the Nickel Plate engineers whose seniority rights are found in the Sandusky Division.

This same class of plaintiffs instituted a suit in the Court of Common Pleas of Allen County, Ohio, in 1935 against certain named defendants, among whom were the three defendants involved here. The 1935 action, Stukey v. The New York, Chicago & St. Louis Railroad Co., resulted in the court making certain findings, some of which were favorable to defendants, but others of which were appealed by defendants to the Court of Appeals for Allen County. The Court of Appeals, in 1938, modified the lower court's findings by striking and eliminating certain of the findings considered by defendants to be unfavorable, and affirming the remaining findings. The decisions of both courts, though unreported, are reprinted in full in Defendants' appendix. The decision in the Court of Appeals was not appealed any further by any of the parties, and the judgment became final. It is this final judgment that defendants here assert is res judicata and binding on plaintiffs, thereby precluding them from pressing this instant action.

■ ⌐ The familiar doctrine of res judicata, briefly stated, is as follows:

"The judgment or decree of a court of competent jurisdiction on the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same or any other tribunal." 50 C.J.S. Judgments § 592.

But though the doctrine is familiar, its application to particular cases is often hazardous, and can only be accomplished by a close comparison of the instant case with the one asserted as res judicata, to insure that all the requisites are met.

■ Presuming the legitimacy of the present class suit, it is obvious that the parties plaintiff and defendant in the instant action were represented in the same capacity in the Stukey case, and that both actions were brought as a class suit. It is additionally clear that when a class action is of the type described in Rule 23(a) (1) of the Federal Rules (a "true" class suit as it is often called), the judgment or decree deciding the action concludes the parties and privies as to the same issues raised in a subsequent action, despite the fact that many of the plaintiffs or defendants may not have been present during the action, or may not even have been aware of the pendency of the action. Supreme Tribe of Ben-Hur v. Cauble, 1921, 255 U.S. 356, 41 S. Ct. 338, 65 L.Ed. 673. See also 3 Moore's Federal Practice (2d ed.) para. 23.11, where the effect of judgments in "true", "hybrid" and "spurious" class actions is fully developed and discussed. Thus, if the Stukey case was in the nature of a true class action, then the initial problem of whether the Stukey decision, in any event, could be binding on the instant class of plaintiffs, who were not even employed by the Nickel Plate in 1935, is re-

solved. We are here controlled by the decision of our Sixth Circuit in System Federation No. 91, etc. v. Reed, 1950, 180 F.2d 991, where the Court held that an action by a group of railroad machinists on behalf of all the members of their craft to obtain protection of their seniority and promotional rights was a true class suit, notwithstanding the fact that one of the rights sought to be enforced was allegedly several in character, and that therefore the judgment entered therein was res judicata of the rights of all members of the class represented by the parties plaintiff therein. The Stukey case thus was brought as a true class suit, and its judgment is binding on the designated class of plaintiffs and their privies.

We now turn to the necessary question of whether the issue or issues of fact that were raised and decided in the Stukey case are the same as we are confronted with here. The plaintiffs would have us reach a negative decision, arguing that substantially different issues existed in Stukey, in that only the right of men from the diverted seniority districts who had seniority rights prior to the agreement of June 4, 1933, was litigated and decided, while here the plaintiffs are only questioning the right of men from the Peoria Division and the Clover Leaf District who were hired subsequent to the 1933 agreement to continue to hold jobs in the Sandusky Division. The record of the Stukey case does not, in our mind, substantiate this alleged distinction. Although some of the language in the Stukey petition indicates that only "prior rights" men were involved,[3] the prayer of the petition leaves little doubt that plaintiffs were attempting to secure a judicial determination of their employment rights in the Sandusky Division, not only as against prior rights men but also as against anyone else who might be considered as encroaching on their alleged employment rights. Thus, the plaintiffs prayed that "The New York, Chicago & St. Louis Railroad Company be commanded and required to fully restore and recognize plaintiff's seniority district, seniority, and seniority rights as the same existed immediately prior to June 4, 1933". Since the suit was not brought until sometime after the agreement went into effect, it seems apparent that men whose seniority rights accrued after June 4, 1933 could have been employed in the Sandusky District, and that the plaintiffs wanted these, as well as prior rights men, to be ousted from their jobs in the district. Otherwise, how could they hope to be restored to their positions as "existed immediately prior to June 4, 1933"?

We are further lead to this conclusion by an examination of the transcript of the proceedings in the two courts wherein judgments were rendered, and by the various contentions of the party-defendants, as expressed in briefs filed in the case before the Ohio Court of Appeals.[4] The Court of Common Pleas made thirty-two findings in the Stukey case, most of which were favorable to defendants and thus not appealed by them. Among these findings were ones to the effect that the defendant brotherhoods had the right to determine how the trains carrying the diverted traffic should be manned, and had the right to establish a policy in respect thereto, in the absence of fraud, collusion, etc.; that the Nickel Plate had a lawful right to divert traffic from one seniority district to another; that the Nickel Plate had not deprived the plaintiffs of any property rights; that the defendant brotherhoods were acting for the employees collectively in working out a plan or policy which protected and retained some of the employees on the

---

3. See pp. 9–10 of defendants' printed appendix.

4. For the purpose of applying the rule of res judicata, what was involved and determined in the former suit is to be tested by an examination of the record and proceedings therein, including the pleadings, the evidence submitted, the respective contentions of the parties, and the findings and opinions of the court. State of Oklahoma v. State of Texas, 1921, 256 U.S. 70, 41 S.Ct. 420, 65 L.Ed. 831; Cities Service Co. v. Securities and Exchange Comm., 3 Cir., 1958, 257 F.2d 926.

seniority districts from which such diversion was made; and that the plan did not result in a burden or detriment to the employees on the road or seniority district to which such diversion was made.

However, Finding No. 27 and Order No. 4 of the court were appealed by the defendants to the Ohio Court of Appeals as not being supported by any evidence and as being contrary to all the evidence in the record, in that the said Finding and Order, if given effect, would nullify the scope and purpose of the agreement of June 4, 1933 entered into by the Nickel Plate and the two brotherhoods. The defendants, in their appeal, further asserted that the contested finding and order, if given effect, would contradict the earlier findings of the court which were favorable to defendants. Finding No. 27 is set out as follows:

"After the diversion of traffic and the manning of trains as heretofore indicated, and after the basis of the division of work had been determined by agreement between the Brotherhoods, respectively, on the one hand, and the Railroad Company on the other, as set forth in paragraphs 8 and 10, particularly referring to the transfer of crews from the Clover Leaf to the Lake Erie and Western District resulting from the diversion of traffic, such traffic when diverted became the normal traffic of the Lake Erie and Western District, and when and if the men transferred at the time of the diversion quit employment, or choose runs in their own seniority district, or die, or are discharged for cause, or are promoted according to their rights in the Clover Leaf seniority district, the Lake Erie and Western men shall gradually acquire the rights in such vacancies and the right to man them according to the Lake Erie and Western seniority roster, so that all such diverted traffic will eventually be manned by men from the Lake Erie and Western District, unless otherwise deter-

mined by agreement of the parties. The same principles shall apply as between the men of the Lake Erie and Western and Nickel Plate Districts, subject, however, to the application of the lap mileage rule."

Order No. 4 reads as follows:

"That plaintiffs and defendants be and each of them is hereby ordered to follow and obey the principles of the division of the work in the Frankfort-Lima pool and in the Lima-Bellevue pool as set forth in paragraph 27 herein, and each of them is enjoined from violating the same, unless the Brotherhoods, respectively, on the one hand, and the Railroad Company on the other hand, otherwise lawfully agree."

The Court of Appeals, in rendering its decision, found that the portion of Finding No. 27 beginning with "and when and if" and continuing to the end, was erroneous in that it was contrary to the evidence and the law, and that Order No. 4 was erroneous for the same reason. The Court therefore ordered that the judgment of the lower court be modified by striking and eliminating from the decision that segment referred to above.

The result of this decision, then, was to affirm the findings of the trial court that were favorable to defendants (including Finding No. 21, which specifically found that the defendant brotherhoods had the right to determine how the trains carrying the diverted traffic should be manned, and Finding No. 19 which found that the acts of the brotherhoods in creating the agreement for the manning of the diverted traffic were not illegal, arbitrary or unwarranted), but to eliminate any language in the decision of the trial court that would indicate that only "prior rights" men had a continuing right to maintain and man the jobs on the Sandusky Division.

When the decision of the Court of Appeals is read in conjunction with the pleadings, the briefs, and the apparent intention of the parties to the 1933 agree-

ment,[5] we reach the conclusion that the rights of employees from the diverted seniority districts to hold jobs in the Sandusky Division under the 1933 agreement was specifically decided; that such decision contemplated and resolved the question as to all employees, regardless of their particular seniority dates; that the decision affirmed the right and duty of the various defendants to promulgate a workable and equitable division of job placements on the revamped Sandusky Division; and that the agreement of 1933, which was the final embodiment of the negotiations between the various interested parties, was a fair and equitable settlement of the problem created by the diversion.

■ Having reached the conclusion we do, we fail to distinguish the cause of action in the instant case from the one in the Stukey case. The entire complaint made in this case is predicated on the assumption that plaintiff's seniority rights were being violated every moment a Toledo or Peoria engineer with a seniority date subsequent to June 4, 1933 held a job in the Sandusky Division, and that the Brotherhood of Locomotive Engineers condoned this continuing practice, thereby discriminating against plaintiffs in violation of its obligation under the Railway Labor Act, 48 Stat. 1185, 45 U.S. C. § 151, 45 U.S.C.A. § 151 as plaintiffs' exclusive collective bargaining representative. Yet our reading of the entire record in the Stukey case presently be-

fore us, including decisions of the two courts, convinces us that plaintiffs' assumption is false. This being so, the relief requested by plaintiffs in their prayer for judgment is beyond our means, for the agreement of August 22, 1957 was simply an outgrowth of the 1933 agreement which, by its very terms, permitted a modification of the rights under the agreement by consent of all the parties thereto. And the legality of this 1933 agreement was specifically passed upon and affirmed by the Ohio Court of Appeals for Allen County. Thus, even if we were to disagree with the effect which the Court of Appeals, by its decision, necessarily gave to that agreement, or even if we were to assume that the court was erroneous in its decision,[6] we would still be bound by the court's judgment in this respect under the Full Faith and Credit clause of the United States Constitution, Art. 4, § 1. See Hartmann v. Time, Inc., 3 Cir., 1948, 166 F.2d 127, 1 A.L.R.2d 370. The foundation upon which plaintiffs' claim in the Stukey case was constructed is the same foundation as is found in the instant case; to wit, that the defendants discriminated against plaintiffs by enforcing the 1933 agreement in violation of plaintiffs' seniority and promotional rights. This foundation, crumbled in the first case, cannot now be reconstructed by the same class of plaintiffs to support the same claim. Plaintiffs here complain that the 1957 agreement is simply a manifestation of

---

5. Correspondence between the General Chairmen of the Brotherhood of Locomotive Engineers in the Clover Leaf and the Lake Erie and Western Districts on the one hand, and the General Manager of the Nickel Plate on the other, indicates that the assignment of jobs in the re-defined Lake Erie and Western District (Sandusky Division) on a percentage basis was to be a permanent part of the working agreements then in effect, and would continue "until found necessary for further adjustment". See pp. 44–45 of Brotherhood of Locomotive Engineers' brief in the Court of Appeals, attached to defendants' reply brief in the instant case.

6. We in fact fully support the decision in Stukey. The area of collective bargaining is one of the most troublesome in the law, mostly due to the myriad conflicting individual rights that are necessarily involved. And it is because of this that collective bargaining and negotiation is often the only effective and just method of settling controversies that arise in the labor area. Consequently, when an agreement such as this is finally settled upon after due negotiation, it should be with some reluctance that a court substitutes its judgment for that of the combined bargaining representatives of the employer and employees involved. See Ford Motor Co. v. Huffman, 345 U.S. 330, at page 338, 73 S.Ct. 681, at page 686, 97 L.Ed. 1048.

the illegal conduct pursued by defendants since 1933, and condones a period of twenty-four years of oppressive discrimination. Yet as we discern the intentions of the parties to the 1933 agreement, and as we read the Stukey decisions, the 1957 agreement is simply a result of the defendants exercising their right to adjust the scope of the agreement when it was found necessary. Since the 1933 agreement was held valid, then it follows that plaintiffs cannot complain of the terms of the 1957 agreement, since it creates job benefits for them that they had no right to claim under the earlier agreement.

Plaintiffs further defend their right to bring this suit on the ground that it is being brought under the Railway Labor Act, supra, irrespective of their union membership, while the plaintiffs in Stukey brought their claim under the Constitution, By-Laws, Statutes and Standing Rules and Regulations of their respective unions, This, says plaintiffs, changes the theory under which the claim is brought, thereby nullifying any application of the doctrine of res judicata to their claim. It may very well be that plaintiffs have asserted a different cause of action, but we do not conceive this as being controlling here. Rather, it is a general rule and a fundamental principle of jurisprudence that facts or questions previously in issue and determined by a court of competent jurisdiction become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in a subsequent action, and whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases it is immaterial that the two actions are based on different grounds, or are tried on different theories. Davis v. McKinnon & Mooney, 6 Cir., 1959, 266 F.2d 870; N. L. R. B. v. Brown & Root, Inc., 8 Cir., 1953, 203 F.2d 139. Although the instant suit is brought under the Railway Labor Act, plaintiffs can prevail only upon the proof of facts and questions that were decided to the contrary in the Stukey case; namely, the question as to the validity and legality of the 1933 agreement, and the construction that should be given to it as regards the right of engineers from the diverted districts whose seniority dates were subsequent to the agreement to hold jobs in the Sandusky Division. This being so, the change of legal theory cannot aid the plaintiffs, and this present cause of action is barred by the application of res judicata.[7]

In view of our decision on the question of res judicata, we find it unnecessary to undertake a lengthy discussion of the other two defenses raised by the defendants in support of their motion for summary judgment. It does appear that the plaintiffs who bring this suit individually and as representatives of the designated class of Sandusky engineers, and all of whom began their employment with the Nickel Plate no earlier than 1940, are precluded from challenging the terms of their employment contract with Nickel Plate as regards seniority and promotional rights, unless they are being deprived of some rights that accrued to them under the agreements existing at the time they began their employment. The only right which they claim is being violated presently is the right to all the positions for engineers on the Sandusky Division. This claim has been fully adjudicated and decided against them in the Stukey case. It cannot be

7. In any event, the allegation that the acts of the defendants violated rights of the plaintiffs under the Railway Labor Act could have been raised in the Stukey case. Res judicata comprehends not only the matters actually presented to sustain or defeat the right asserted, but also any other available matter which might have been presented to that end. Ohio Transport, Inc. v. Public Utilities Comm. of Ohio, 6 Cir., 1957, 243 F.2d 536; Massachusetts Bonding & Ins. Co. v. Winters National Bank & Trust Co., 6 Cir., 1942, 130 F.2d 5. Also, Finding No. 19 in the Stukey decision specifically found that the acts of the defendant brotherhoods were not illegal, thus impliedly not in violation of the Railway Labor Act.

resurrected here. Plaintiffs assert in their complaint that engineers from the Peoria Division and Clover Leaf District have no equity in any of the engineer jobs on the Sandusky Division. Rather than attacking the judicially-affirmed equities of these men to hold a percentage of the jobs on the Sandusky Division, it behooves plaintiffs to examine their own equitable position in this respect, recalling that they accepted employment with the Nickel Plate fully aware of the employment conditions then existing by agreement of their bargaining representative, and with the approval of the reviewing courts. However, since the contract under which plaintiffs accepted employment is not set out in the pleadings before this Court, the question of whether plaintiffs are estopped from attacking the unfavorable portion of their employment contracts is not properly before us at this time.

For the reasons hereinbefore set forth in this opinion, defendants' joint motion for summary judgment is granted. An order may be prepared in accordance therewith.