Fred W. INGERSOLL, James W. Miller, Francis G. Greene, W. B. Harmon, Vincent E. Schiffler, Plaintiffs-Appellants,

v.

BROTHERHOOD OF LOCOMOTIVE ENGINEERS, Defendant-Appellee.

The NEW YORK, CHICAGO & ST. LOUIS RAILROAD COMPANY, Defendant-Third-Party-Plaintiff-Appellee,

v.

BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN, Third-Party-Defendant-Appellee.

No. 14620.

United States Court of Appeals
Sixth Circuit.

Aug. 31, 1962.

Joseph C. Waddy, Washington, D. C., Wm. C. Garner, Wm. B. Bryant, Washington, D. C., Chester K. Gillespie, Cleveland, Ohio, on the brief, for appellants.

Harold C. Heiss, Cleveland, Ohio, for Brotherhood of Locomotive Engineers, et al.

Edwin Knachel, Cleveland, Ohio, for The New York, Chicago & St. Louis Railroad Company.

Harold N. McLaughlin, John H. Ritter, Cleveland, Ohio, on the brief, for defendant Brotherhood of Locomotive Engineers.

Edwin Knachel, John G. Cardinal, Cleveland, Ohio, on the brief, for defendant, The New York, Chicago & St. Louis Railroad.

Russell B. Day, Harold C. Heiss, Cleveland, Ohio, on the brief, for defendant Brotherhood of Locomotive Firemen and Enginemen.

Before MILLER, Chief Judge, SIMONS, Senior Circuit Judge, and DARR, Senior District Judge.

SHACKELFORD MILLER, Jr., Chief Judge.

This declaratory judgment action, arising under the Railway Labor Act, Section 151 et seq., Title 45, United States Code, Annotated, was filed in the District Court against The New York, Chicago and St. Louis Railroad Company, hereinafter referred to as the Nickel Plate, and the Brotherhood of Locomotive Engineers, hereinafter referred to as the Brotherhood. The plaintiffs are employed as locomotive engineers by the Nickel Plate. The Brotherhood is the representative under the Railway Labor Act of the craft or class of engineers employed by the Nickel Plate. The plaintiffs ask that an agreement of August 22, 1957, between the Brotherhood and the Nickel Plate, dealing with seniority rights in the Sandusky Division of the Nickel Plate, be declared illegal and void and that the defendants be enjoined from enforcing said agreement. The defendants in turn impleaded the Brotherhood of Locomotive Firemen and Enginemen, hereinafter referred to as the Firemen's Organization. For the purposes of this opinion, the Nickel Plate, the Brotherhood and the Firemen's Organization will be referred to as defendants. The plaintiffs brought the action in their individual capacities and as representatives of all the engineers employed on the Sandusky Division of the Nickel Plate, alleging that said engineers constituted a class too numerous to be brought individually before the Court and that a common question of law and facts was involved and common relief was sought for the class as well as special relief for the named plaintiffs.

In order to understand the issue involved it is necessary to have in mind the following background. The Nickel Plate is composed of a consolidation of the former The New York, Chicago and St. Louis Railroad Company, which was commonly known as the Nickel Plate, the Lake Erie and Western Railroad Company, hereinafter referred to as Lake Erie and Western, and the Toledo, St. Louis and Western Railroad Company, commonly known as the Cloverleaf, and others. The former Nickel Plate Railroad ran from Chicago, Illinois, eastward through Fort Wayne, Indiana, Bellevue and Cleveland, Ohio, and northeastwardly to Buffalo, New York. The Lake Erie and Western ran from Peoria, Illinois, eastward through Frankfort, Tipton and Muncie, Indiana, and then northeastwardly to Sandusky, Ohio, crossing the former Nickel Plate Road at or about Fostoria, Ohio. The Cloverleaf ran from St. Louis, Missouri, northeastwardly through Frankfort, Indiana, and Delphos, Ohio, and then northwardly to Toledo, Ohio, crossing the Lake Erie and Western at Frankfort, Indiana, and crossing the former Nickel Plate at Continental, Ohio. About 1923 these three railroads were brought under one management and later were consolidated into one company—the present Nickel Plate Railroad. After the consolidation the territories of the former individual railroads became operating districts of the consolidated railroad.

Prior to the consolidation the Lake Erie and Western maintained seniority districts, among them being the Sandusky District running from Sandusky, Ohio, to Tipton, Indiana, and the Peoria District running from Tipton, Indiana, to Peoria, Illinois. Likewise, the Cloverleaf maintained seniority districts, among them being the Toledo District running from Toledo, Ohio, to Frankfort, Indiana, and the St. Louis District running from Frankfort, Indiana, to St. Louis, Missouri. Engineers and firemen were hired on these seniority districts and given exclusive seniority and promotion rights upon the districts on which they were hired. Subsequent to the consolidation the seniority districts became seniority divisions within the respective operating districts. Plaintiffs' employment, seniority and promotion rights are on the Sandusky Division of the Lake Erie and Western District. The present

controversy is over seniority rights in the Sandusky Division and is between them and the engineers in the Toledo Division and the Peoria Division, brought about by the following circumstances.

On or about June 4, 1933, certain railroad traffic, which prior to that time had been routed over the Toledo Division of the Cloverleaf District, was diverted from that District to the Sandusky Division of Lake Erie and Western District, and the terminal point for firemen and engineers employed on the Peoria Division of the Lake Erie and Western District was moved from Tipton, Indiana, westward to Frankfort, Indiana. These changes increased the work available on the Sandusky Division and caused a loss of work by employees on the Peoria Division and the Toledo Division. In connection therewith, agreements were made among the Nickel Plate, the Brotherhood and the Firemen's Organization whereby a limited number of firemen and engineers who were then employed and held exclusive rights on the Toledo Division of the Cloverleaf District were permitted to man a certain number of runs in the Lima-Frankfort Pool of the Sandusky Division to compensate them for the loss of the diverted traffic, and a limited number of firemen and engineers who were then employed and held exclusive seniority rights on the Peoria Division of the Lake Erie and Western District were permitted to man certain jobs in the Frankfort yard on the Sandusky Division to compensate them for loss of mileage.

This arrangement was not satisfactory to the Sandusky Division firemen and enginemen, who in May 1935 brought a class suit against the Nickel Plate, the Brotherhood, the Firemen's Organization, and a number of local lodges of the unions and individual officers thereof, seeking to upset the arrangement. That case was brought in the Court of Common Pleas, Allen County, State of Ohio, and was styled F. E. Stukey, et al. v. The New York, Chicago and St. Louis Railroad Company, et al., hereinafter referred to as the Stukey case. The plaintiffs in the present case were not then in the employ of the Nickel Plate.

The plaintiffs in the Stukey case claimed seniority rights in the Sandusky Division prior to the rights of the engineers in the other divisions and contended that the arrangement above referred to giving the firemen and engineers in the Toledo Division and Peoria Division certain seniority rights in the Sandusky Division violated the Constitutions, By-laws, Statutes, Standing Rules and Regulations of the unions and their working agreement with the Nickel Plate. They asked that the Court enjoin the Nickel Plate from depriving them of their seniority and property rights and that it be required to restore and recognize their seniority rights as they existed immediately prior to June 4, 1933. The Court ruled that while seniority rights are contract rights which will be protected by the courts, the employee holding such rights may by contract vest any power to modify such rights in agencies named by him; that the defendant Railroad Company had a lawful right to divert traffic from one seniority district to another under a plan the purpose of which was to effect economies; and that when such plan of diversion became effective, the defendant Brotherhoods had the right to determine how trains, carrying such diverted traffic should be managed and had the right to establish a policy in respect thereto, so long as their actions in the premises were not fraudulent, collusive, arbitrary or contrary to public policy. The Court found that the arrangement complained of was based upon the business involved as of June 4, 1933, and that the unions had not acted unlawfully or arbitrarily in entering into the arrangement. The decision was appealed to the Ohio Court of Appeals of the Third District. The Court of Appeals in 1938 modified the lower court's findings by striking and eliminating certain of the findings considered by the defendants to be unfavorable, and affirmed the remaining findings.

On June 22, 1955, the Brotherhood entered into an agreement to be effective July 1, 1955, but subsequently extended to November 1, 1955, which would have removed the Toledo and Peoria engineers operating in the Sandusky Division, whose seniority rights were not prior to June 4, 1933, which if enforced, would have eliminated the alleged discrimination against the Sandusky Division engineers. However, this 1955 agreement was never put into effect by the Nickel Plate or attempted to be enforced by the Brotherhood. Instead, the Brotherhood entered into an agreement on August 22, 1957, under which the date of June 4, 1933, dealing with seniority rights in the June 22, 1955, agreement was changed to read November 1, 1955. Under this contract engineers in the Peoria Division and in the Toledo Division whose seniority dates were prior to November 1, 1955, instead of prior to June 4, 1933, were given rights in the Sandusky Division. This is the agreement which the plaintiffs attack in the present action, alleging that the Brotherhood in order to insulate itself and avoid possible claims for damages from Toledo Division and Peoria Division engineers who had benefited from its prior discriminatory failure and refusal to enforce fairly plaintiffs' seniority rights did maliciously sacrifice the rights of the plaintiffs and other Sandusky Division engineers similarly situated by using its statutory position to enter into an agreement with Nickel Plate authorizing and extending the prior discriminatory practice in favor of the engineers in the Peoria and Toledo Divisions.

In addition to denials that the Brotherhood had failed and refused to represent the plaintiffs fairly and impartially or had maliciously sacrificed the rights of the Sandusky Division engineers, the defendants stated certain facts alleged by them to justify the failure to put into effect the agreement of June 22, 1955, and by way of affirmative defense pleaded that the decision in the Stukey case was res judicata of the issue in the present case and thus barred the plaintiffs from attacking the right of the engineers in the Toledo Division and in the Peoria Division to man jobs on the Sandusky Division. The defendants filed a motion for summary judgment based on the plea of res judicata. In answer to the plea of res judicata the plaintiffs contend that the Stukey case only adjudicated the rights of engineers whose seniority rights existed prior to June 4, 1933, and did not adjudicate the rights of engineers whose seniority rights were acquired thereafter, whose seniority rights in the Sandusky Division are attacked in the present action. They point out that the present plaintiffs were not employees of the Nickel Plate until after June 4, 1933. The motion was sustained by the District Judge who dismissed the complaint. The present appeal is from that order.

In sustaining the defendants' motion for summary judgment the District Judge analyzed the situation and discussed the issue of res judicata and its application to the present case at some length in an opinion reported at Ingersoll v. Brotherhood of Locomotive Engineers et al., D.C., 192 F.Supp. 669. He held that both the Stukey case and the present case were brought by the plaintiffs as class actions on behalf of Nickel Plate engineers whose seniority rights were found on the Sandusky Division against the same defendants, and that in such a class action the judgment or decree concludes the parties and privies as to the same issues involved despite the fact that many of the class did not themselves actually participate in the litigation or may not have even been aware of the pendency of the action. Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673; System Federation No. 91 v. Reed, 180 F.2d 991, C.A. 6th. He held against plaintiffs' contention that the issue decided in the Stukey case was limited to those engineers who had seniority rights prior to June 4, 1933. His reasons for so holding are fully set out in his opinion above referred to.

We agree with the District Judge that the ruling in the Stukey case

is binding upon the plaintiffs in this action, even though they were not parties to that action and were not in the employ of the Nickel Plate on June 4, 1933. We also agree, for the reasons given by the District Judge, that the ruling in that case was not limited to those engineers whose seniority rights existed prior to June 4, 1933, and that under that ruling the plaintiffs have no vested seniority rights on the Sandusky Division superior to the. rights of engineers from the Peoria and Toledo Divisions whose seniority rights accrued thereafter. Seniority rights are not vested rights. They accrue by virtue of contract between the employer and the bargaining representative of the employees. Aeronautical Indus. Dist. Lodge 727 v. Campbell, 337 U.S. 521, 526, 69 S.Ct. 1287, 93 L.Ed. 1513; Ford Motor Co. v. Huffman, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048. They can be changed or modified by a similar contract. Elder v. New York Cent. R. Co., 152 F.2d 361, C.A.6th; System Federation No. 59 etc. v. Louisiana & A. Ry. Co., 119 F.2d 509, 515, C.A. 5th; Oddie et al. v. Ross Gear & Tool Co., 305 F.2d 143, C.A.6th. But we do not think that this is sufficient to sustain the plea of res judicata in the present case.

■■■ The complaint in the present case attacks the validity of the August 22, 1957, agreement. That agreement was not in existence at the time of the Stukey case and its validity was of course not adjudicated in that litigation. The subject matter of the two suits, although similar, is not the same. Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. The judgment in the Stukey case (1) upheld the right of the Brotherhood to make a contract giving the engineers on the Peoria and Toledo Divisions seniority rights on the Sandusky Division, (2) that the contract in existence *at that time* was fairly and impartially made by the Brotherhood in the exercise of good faith. It is essential to the validity of such a contract that it be so made. Steele v. Louisville & N. R. Co., 323 U.S. 192, 204, 65 S.Ct. 226, 89 L.Ed. 173; Railroad Trainmen v. Howard, 343 U.S. 768, 772, 72 S.Ct. 1022, 96 L.Ed. 1283. In the present case it can be conceded that the Brotherhood has the right to make such a contract as the one of August 22, 1957, and still present to the Court the issue of whether *this* contract was fairly and impartially made in the exercise of good faith. The factual situation in 1957 had changed from what it was at the time the Stukey case was decided. The agreement of June 22, 1955, had given the plaintiffs certain seniority rights in the Sandusky Division, which, under our construction of the judgment in the Stukey case, they did not have prior to that agreement. The issue in the present case, even with the plaintiffs conceding that our construction of the judgment in the Stukey case is correct, is not the effect of the Stukey judgment on the plaintiffs' claims, but whether seniority rights validly acquired by them after the Stukey judgment under the 1955 agreement were legally taken from them by the agreement of August 22, 1957. The complaint attacks the validity of the 1957 agreement, alleging that it was not made in good faith, but that the Brotherhood maliciously sacrificed the rights of the plaintiffs in order to insulate itself and avoid possible claims for damages from the Peoria Division and Toledo Division engineers. This is denied by the defendants but it presents a factual issue which was not adjudicated by the judgment in the Stukey case and which prevents the disposition of this action on defendants' motion for summary judgment.

The judgment is reversed and the case remanded to the District Court for a hearing on the merits, with findings of fact and conclusions of law to be made by the District Judge with respect to the good faith, impartiality, and absence of arbitrary discrimination on the part of the Brotherhood in negotiating and executing the agreement of August 22, 1957, and the validity thereof.