BILTCHIK and another, Appellants, vs. GREEN BAY & WEST-
ERN RAILROAD COMPANY and others, Respondents.

*February 25—April 8, 1947.*

For the appellants there were briefs by *Marvin. L. Kohner* and *Schmitz, Wild & Gross,* all of Milwaukee, attorneys, and *Geist & Netter* and *Netter & Netter,* all of New York, N. Y., of counsel, and oral argument by *George Netter* and *William E. Netter.*

For the respondents there was a brief by *North, Bie, Welsh, Trowbridge & Wilmer* of Green Bay, attorneys, and *F. N. Trowbridge* of Green Bay, and *Cadwalader, Wickersham & Taft, Merrill M. Manning,* and *Walter Bruchhausen,* all of New York, N. Y., of counsel, and oral argument by *Mr. Bruchhausen, Mr. Manning,* and *Mr. Trowbridge.*

FOWLER, J.   The instant action was tried before the Hon. HENRY GRAASS, circuit judge for Brown county, who was killed in an automobile collision before deciding it.   On stipu-- lation the case was submitted for decision to the HON. AROLD F. MURPHY, judge of the Twentieth circuit, upon a transcript of the evidence introduced before Judge GRAASS and the briefs of the parties submitted to him.   The nature of the action is stated by Judge MURPHY in a written decision filed by him as follows:

"The plaintiffs, Aaron L. Biltchik and Florence W. Brill, are holders of Class B debentures of the defendant Green Bay & Western Railroad Company, and they sue as individual se- curity holders and on behalf of all other holders of the same securities.   It is a representative action, and no other holders of the same class of securities have intervened in the action. The individuals named as defendants are the directors of the defendant railroad company.

"The plaintiffs demand judgment directing the defendant directors 'to fix and declare, and the railroad company to pay

*pro rata* to the plaintiffs and all other holders of Class B debentures the sum of $825,856.50 plus such amount as the court may find to be due and owing for the year 1944,' the said sum being the alleged 'annual net income and annual net earnings of the railroad company, in excess of the amounts distributable to the holders of the Class A debentures and of the common stock, for the years from 1924 to 1944, both inclusive.' . . ."

"A plan of reorganization of the predecessor company, adopted in the year 1896, and, which brought into existence a new company, the defendant railroad company, followed on the heels of a foreclosure action in the federal district court of Wisconsin. The sum of $600,000, new money, was raised and the defendant railroad company took over the assets of its predecessor after the foreclosure. The capital structure after reorganization was as follows:

"Class A income debentures, $600,000.

"Common stock, $2,500,000.

"Class B debentures, $7,000,000.

"No actual cash was paid by anyone for any of the Class B debentures. . . .

"This action is brought to recover the balance due on interest to the Class B debenture holders upon a covenant contained in the debentures which in material part reads as follows:

" '. . . the holders . . . shall in lieu of interest thereon participate in the distribution of annual net income to the following extent only, viz.: So much of the annual net earnings in any year as would be applicable to the payment of dividends on stock shall be applied as follows: (five per cent upon the face value of the Class A debentures and on the par value of the common stock) and any surplus net earnings arising in such year which may then remain shall be paid to and distributed among the holders of Class B debentures *pro rata*. None of such payments shall be cumulative. The amounts, if any, payable on this series of debentures out of the net earnings in any year, will be fixed and declared by the board of directors on or before the first day of February, in the following year, and when so declared, any amount payable hereon will be paid: . . . ' "

Of the securities above mentioned the $600,000 Class A debentures were issued to the persons who advanced the new

money, the $2,500,000 stock to the holders of the first-mortgage bonds in foreclosure on their surrender, and the $7,000,000 Class B debentures to the holders of the second-mortgage bonds and the common and preferred stock of the old company on their surrender.   It is clear from the undisputed evidence that had the foreclosure suit proceeded in the common course of practice to sale of the mortgaged property neither the holders of the second-mortgage bonds nor the stockholders of the old company would have received anything. The scheme of reorganization was manifestly planned to assure that the holders of the subordinate securities should receive nothing whatever until the holders of the new Class A debentures and the new stock were compensated both through current income and on liquidation of the new corporation, and this must be borne in mind in construing the provisions of the Class B debentures on which the suit is based.   Not only the provision for payment of dividends on the Class B debentures after the five per cent on the Class A debentures and to stockholders is paid, but all other provisions of the Class B debentures must be considered in determining what income the Class B debenture holders should receive.

The provision relied on by the plaintiffs and the only one considered by them provided that the holders of the Class B debentures—

"shall in lieu of interest thereon participate in the distribution of annual net income to the following extent only, viz.: So much of the annual net earnings in any year as would be applicable to the payment of dividends on stock shall be applied as follows: (five per cent upon the face value of the Class A debentures and on the par value of the common stock) and any surplus net earnings arising in such year which may then remain shall be paid to and distributed among the holders of Class B debentures *pro rata*.   None of such payments shall be cumulative."

Not only this provision but two other provisions of the Class B debentures must be considered.   Two of these bear

directly on what income the Class B debenture holders are entitled to be paid. One provides that nothing shall ever be paid on the principal until sale or reorganization of the defendant corporation, and "then only out of any net proceeds . . . after payment of any liens and charges upon such railroad or property, and after payment of $600,000 to the holders of . . . [the Class A debentures] and the sum of $2,500,000 to and among the stockholders . . . [of the instant corporation]," and that "such net proceeds remaining . . . shall be distributed *pro rata* to and among the holders of . . . the Class B debentures." This as to distribution on liquidation puts the holders of the Class B debentures on the footing of stockholders of an ordinary corporation. It makes them, instead of the stockholders, the owners of the equity of the corporation. The other provides "that the amounts, if any, payable upon this series of debentures out of the net earnings in any year, will be fixed and declared by the board of directors on or before the first day of February in the following year." This makes the payment out of the earnings of any year discretionary with the directors; that is they may retain the net earnings of any year after the Class A debenture holders and stockholders have been paid to apply to betterments, if in their reasonable judgment proper management so requires.

The defendant is a railroad corporation and as such it is the duty of its directors to keep it in proper operation and to pay the expenses of such operation and of maintaining its physical property in condition requisite for such operation, and to pay dividends to its stockholders only from its net earnings after these expenses are paid except as they may be paid out of accumulated surplus. Income on the Class B debentures not being payable until after the five per cent dividend to stockholders is paid, income on the Class B debentures cannot be paid until after these expenses are paid. This feature is further provided for, as is also the way in which income on the Class B debentures is computed and distributed, by the provision of the Class B debentures that "the amounts [of income]

if any, payable upon . . . [the Class B debentures] out of the net earnings in any year will be fixed and declared by the board of directors on or before the first day of February, in the following year." Upon all the terms of the Class B debentures the holders of the Class B debentures can receive no income until after all expenses of operation and maintenance have been paid and the holders of the Class A debentures and common stock have each. been paid their five per cent as interest and dividends.

The trial court found upon undisputed evidence that all gross earnings of the railroad had actually been properly applied. All not paid as interest on the Class A debentures and dividends to the stockholders and as income on the Class B debentures had actually been consumed in operating expenses and devotion to maintenance of the physical properties. The court also found that the amounts applied to maintenance and betterments were proper. The improvements made had enabled the directors to pay at least something by way of income on the Class B debentures while prior to making such improvements there had been no net income to apply to them, and the value of the equity of the owners of the Class B debentures had been thereby increased over $2,000,000. The conclusion of the trial court of proper management by the directors and officers of the corporation is supported by these facts and the direct testimony of these officers.

It is true that the evidence does not disclose that annually the directors had always acted strictly in accordance with the provisions of the Class B debentures for determining on February 1st the amount of the income payable on the Class B debentures, or that the amounts of improvements had been determined in advance of payments of interest on the Class A debentures and dividends, but as the earnings of the corporation were all in fact applied to proper purposes to the advantage of the corporation and to the advantage of the owners of the

Class B debentures, no harm or prejudice resulted to the latter by reason of the time when or the defective manner, if any, in which the expenditures were authorized or the income on the Class B debentures declared.

The view that it is discretionary with the directors whether to pay the amount of net earnings remaining in any year after five per cent has been paid to Class A debenture holders and the stockholders as dividends to the Class B debenture holders, was taken by a federal court of appeals in New York and the supreme court of the United States in *Williams v. Green Bay & W. R. Co.* (2d Cir.) 147 Fed. (2d) 777, and 326 U. S. 549, 66 Sup. Ct. 284, 90 L. Ed. 311. A case was brought by holders of Class B debenture bonds of the instant company in a United States district court of New York to recover the amount of the net income of specified years after payment of five per cent to Class A debenture holders and stockholders, *pro rata* to the plaintiff. The case was dismissed by the district court, without prejudice to bringing the action in the state of Wisconsin. This judgment was affirmed by the federal circuit court of appeals. On *certiorari* to the supreme court of the United States that court reversed the judgment and remanded the case to the federal district court for trial. While the case was decided by the federal circuit court of appeals on the sole ground whether the district court should have dismissed the case the supreme court states, p. 551:

"The Class B debentures, issued in 1896, have no maturity date. Their principal is payable 'only in the event of a sale or reorganization' of the company and 'then only out of any net proceeds' remaining after specified payments to the Class A debentures and to the stock. The covenant in the Class B debentures out of which this litigation arises is set forth below. [See *supra,* p. 180.] The circuit court of appeals was divided as to its meaning. The majority concluded that even though there were net earnings after the payments to the Class A debentures and to the stock, the directors had discretion to deter-

mine whether or not that sum should be paid to the Class B debentures. . . .

"We leave open the question of the proper construction of the 'net earnings' covenant in the Class B debentures. Although we assume that the majority of the court below was right in its interpretation of the covenant, we think it was improper to dismiss the case on the grounds of *forum non conveniens.*"

When the case later came up for trial in the district court, that court, October 11, 1946, 68 Fed. Supp. 509, 512, ruled that the decision of the court below here under review construing the "Class B debentures to mean that none of the income or earnings" of the defendant is payable to the holders "unless and until" the directors "in their discretion" so declare, was *res judicata* as to that court and granted judgment of dismissal.

The same position as to action of the directors to declare a dividend to Class B debenture holders being discretionary was taken in *Green Bay & W. R. Co. v. Commissioner,* 3 T. C. 372 (7th Cir.), 147 Fed. (2d) 585. These decisions, of course, do not control this court, but are perhaps of more weight as support to our decision that payment to holders of Class B debentures is discretionary than decisions of courts in other jurisdictions generally are.

*By the Court.*—The judgment of the circuit court is affirmed.

FRITZ, J., dissents.