**Axel N. ELIASEN, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**GREEN BAY & WESTERN RAILROAD COMPANY, et al., Defendants.**

Civ. A. No. 80–C–1092.

United States District Court,
E. D. Wisconsin.

Jan. 22, 1982.
As Amended Feb. 23, 1982.

Robert K. Steuer, Weiss, Steuer, Berzowski, Brady & Donahue, and William J. Mantyh, Honeck, Mantyh & Arndt, Milwaukee, Wis., for plaintiff.

Thomas O. Kloehn and Charles A. Grube, Quarles & Brady, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

The plaintiff in this action, Axel N. Eliasen, sues as a holder of Class B Debentures in the Green Bay & Western Railroad Company ("GB&W"). The individual defendants, H. Weldon McGee, R. B. Wilson, John Winthrop, and Charles W. Cox II, were directors of the GB&W in November of 1977. The plaintiff alleges that the individual defendants breached their fiduciary duty to the holders of Class B Debentures by failing to act on an acquisition proposed

by Itel Corporation ("Itel") in a letter dated November 26, 1977. The plaintiff further alleges that Itel's subsequent acquisition of the GB&W through a tender offer was a *de facto* sale or reorganization of the railroad which entitles the holders of the Class B Debentures to a *pro rata* distribution of the net proceeds after payment to persons with prior claims. The plaintiff seeks damages and liquidation of the GB&W, if necessary, to satisfy the claims. The court has jurisdiction under 28 U.S.C. § 1332.

Presently before the Court is the plaintiff's motion for class certification under Rule 23 of the Federal Rules of Civil Procedure.

For the reasons that follow, the Court will certify this suit as a class action under Rule 23(b)(1)(B). The Court further finds that it has jurisdiction over all members of the proposed class.

## I. CLASS CERTIFICATION

On July 8, 1981, the plaintiff moved for a determination that this action is maintainable as a class action. This motion, at page 1, defined the class as "[a]ll holders of Class B debentures of the Green Bay & Western Railroad Company as of November 28, 1977." In his reply brief filed on August 13, 1981, at page 7, the plaintiff submitted a new class definition:

"All holders of Class B Debentures of GB&W as of November 29, 1977, excluding the members of the Board of Directors and those persons and entities holding such Debentures for the benefit of the directors or members of their families."

The plaintiff explained that the change in the date from November 28, 1977 to November 29, 1977, was the result of discovery which allegedly demonstrates that the breach of fiduciary duty took place on the latter date. The plaintiff states that the new exclusion responds to the defendants' objections that the original definition was overbroad. Although the defendants argue against class certification on a number of grounds, the defendants' principal argument is that the plaintiff has not shown

that this Court has jurisdiction over a sufficient number of the putative class members to justify class certification.

■ For an action to be maintained as a class action, all four prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure and one of the conditions under Rule 23(b) of the Federal Rules of Civil Procedure must be satisfied. An order that an action is maintainable as a class action may be altered or amended before the decision on the merits. Rule 23(c)(1) of the Federal Rules of Civil Procedure. A further requirement is that the Court have jurisdiction over the members of the class.

### A. *Prerequisites Under Rule 23(a)*

1. *Class is so numerous that joinder of all members is impracticable.*

■ The Class B Debentures are bearer bonds with attached coupons. In Robert Steuer's affidavit in support of the motion to maintain the class action, filed July 8, 1981, ¶ 17, pp. 8–9, he states that documents with respect to the last two coupons upon which dividends were declared indicate that a total of 6,075 debentures were held by a total of 124 debenture holders. He further states that records maintained by the M&I Marshall & Ilsley Bank, the depository designated in the Itel tender offer, indicate that 106 parties tendered or sold 4,916 debentures. While these figures only estimate the total number of Class B Debenture holders on November 29, 1977, they provide a sufficient basis upon which to conclude that the class is so numerous that joinder would be impracticable.

■ The defendants argue that each member of the class must individually meet the $10,000 amount-in-controversy requirement where jurisdiction is based on diversity. The implication is that only those potential class members who individually have over $10,000 at stake may be counted in determining numerosity. However, jurisdiction and numerosity are separate requirements. See *Lesch v. Chicago & Eastern Illinois Railroad Co.*, 279 F.Supp. 908, 911 (N.D.Ill.1968). Thus the Court does not

need independent jurisdiction over each putative member to count that member in determining numerosity. Regardless, as will be shown below, independent jurisdictional bases are not required in this case. Thus, the plaintiff's estimates of the class size are adequate. But even accepting the defendants' argument that the class must be defined as debenture holders who individually have over $10,000 at stake, the defendants concede a class size of between 33 and 46, defendants' brief in opposition to the motion for class action certification, filed August 4, 1981, at 17, a size sufficient to meet the numerosity requirement.

### 2. Questions of law or fact common to the class.

The central legal and factual questions involved in this action are whether the directors breached their fiduciary duty to the holders of Class B Debentures and whether the Itel tender offer was a *de facto* sale or reorganization necessitating a distribution of the net proceeds. These questions are common to all members of the class.

### 3. The claims or defenses of the representative parties are typical of the claims or defenses of the class.

■ As a holder of Class B Debentures on November 29, 1977, the claims and defenses of the plaintiff would be typical of the claims or defenses of the class. The plaintiff's claims or defenses are not atypical simply because he sold 34 of his Class B Debentures in response to Itel's tender offer while retaining 25. If a class member sold his debenture to anyone after November 29, 1977, the amount received from the sale would offset any damages allegedly resulting from the breach of fiduciary duty and the failure to distribute the net proceeds. The amount of damages owed each class member will have to be determined individually. But the need for individual determination of the amount of damages suffered does not make the plaintiff's claims or defenses atypical.

### 4. Representative party will fairly and adequately protect the interests of the class.

The affidavit of Robert Steuer in support of the motion to maintain the class action, filed July 8, 1981, sufficiently establishes that Mr. Eliasen will fairly and adequately protect the interests of those persons who held the Class B Debentures on November 29, 1977. For ten years the only securities Mr. Eliasen has held in the GB&W were Class B Debentures. During that time Mr. Eliasen has actively sought to protect the interests of Class B Debenture holders. In this action Mr. Eliasen is represented by able counsel.

■ The defendants claim that the plaintiff cannot fairly and adequately protect the interests of the class because liquidation would in fact harm the holder of 77% of the Class B Debentures, Itel, and because the plaintiff would not pursue the claims of those class members who sold their debentures to Itel as vigorously as those who retained their debentures. But as the plaintiff properly responds, Itel is not a member of the class because on November 29, 1977, it did not own any Class B Debentures. Furthermore, the interests of members who sold their debentures to Itel are the same as the interests of those who did not. The facts which must be proven to substantiate a claim by either group are identical. The only difference is the amount of damages each individual suffered.

It is possible that some members of the class may still own some Class B Debentures, and that their interests may be counter to the plaintiff's if they stand to gain more by retaining the debentures than by succeeding in this suit. But the present record does not demonstrate this. If it is so, they may be excluded from the class at a later time. The record does indicate that at least 77% of the debentures held by class members are not held by class members today because they were purchased by Itel.

It is also possible that most persons who held the Class B Debentures on November 29, 1977, also held other GB&W securities

and actually benefitted by the directors' course of action. The directors themselves are alleged to be in this category and are therefore excluded from the defined class. But beyond this, the record does not suggest that the other class members would have benefitted by the directors' actions.

This Court is satisfied that the four prerequisites to a class action as set forth in Rule 23(a) of the Federal Rules of Civil Procedure are fulfilled.

## B. Requirements of Rule 23(b)

■ Rule 23(b)(1)(A)—A class action may be maintained if the prosecution of separate actions would create the risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for the party opposing the class. This risk must be real, not hypothetical. Therefore, the party seeking class certification must demonstrate a likelihood that separate actions will in fact be brought if a class action is not permitted. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968); Wright & Miller, Federal Practice and Procedure § 1773 (1972).

The plaintiff here has stated he knows of no other suits being brought regarding the alleged 1977 breach of fiduciary duty, and the present record suggests that no other such suits will be brought.[1] Therefore, no real risk of inconsistent or varying adjudications exists, and the class action cannot be maintained under Rule 23(b)(1)(A).

■ Rule 23(b)(1)(B)—A class action may also be maintained if there is a risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. A party may invoke Rule 23(b)(1)(B) without demonstrating that separate actions are likely or feasible. Wright & Miller, Federal Practice and Procedure § 1774, at 14 (1972). The rule focuses on the potentially adverse effects as a practical matter of the suit brought by the representatives.

■ Rule 23(b)(1)(B) does not require that the adjudication be legally binding on the absentees. Wright & Miller, supra, § 1774, at 14. However, the stare decisis effect of the adjudication is not ordinarily sufficient to satisfy the rule.[2]

An adjudication in this case could affect the interest of proposed class members in two ways that, while not legally binding, are nonetheless more than just stare decisis. First, the plaintiff has requested the liquidation of the GB&W if necessary to satisfy the claims of the debenture holders. A liquidation, if ordered, would prevent other proposed class members from making claims against the assets of the GB&W. In this respect, this action is similar to *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921), overruled on other grounds, *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62

---

1. One action which is related to the facts of this case is presently before Judge Warren—*Drexler v. Green Bay & Western Railroad Co.*, No. 80–C–1155 (E.D.Wis., filed Dec. 24, 1980). However, the *Drexler* case deals with events occurring after the Itel acquisition of the GB&W, whereas the complaint in this case deals with the events occurring prior to the acquisition.

2. Although the 1966 amendments to the Federal Rules of Civil Procedure liberalized Rule 23, most courts have adhered to pre-1966 decisions which hold that the stare decisis effect of an adjudication is an insufficient impairment to satisfy Rule 23(b)(1)(B). 3B Moore's Federal Practice ¶ 23.35[2], at 23–281 (2d ed. 1981). However, the Rule 23(b)(1)(B) determination of

whether the adjudication would as a practical matter substantially impair or impede the ability of class members to protect their interests is identical to the determination made under Rule 19(a)2(i) respecting persons to be joined if feasible, and Rule 24(a) regarding intervention of right except for the word "substantially." While no pre-1966 cases held that the stare decisis effect was sufficient to grant intervention of right, two circuit courts have held that under the amended rule it can be sufficient. See *Nuesse v. Camp*, 385 F.2d 694 (D.C.Cir. 1967) (judicial construction of the National Bank Act); *Atlantis Development Corp. v. United States*, 379 F.2d 818 (5th Cir. 1967) (intervener claiming an interest in property involved in case).

S.Ct. 139, 86 L.Ed. 100 (1941). There the Supreme Court held that a suit by members of an unincorporated fraternal association attacking a reorganization of that association was a true class action. Here, the plaintiff is attacking a reorganization of the GB&W.

Second, the construction which this Court gives the Class B Debentures will be adhered to in any subsequent suits by Class B Debenture holders.[3] Such adherence would not be mere stare decisis, for the GB&W has a duty to treat all of its Class B Debenture holders equally. In this respect, this action is similar to a shareholder's suit to compel the declaration of a dividend on the proper recognition and handling of redemption or pre-emption rights, a suit which would be maintainable as a class action under Rule 23(b)(1)(B). Rule 23, Federal Rules of Civil Procedure, Advisory Committee Note, 1966 Amendment.

An additional reason for permitting this as a class action is that while this Court's findings respecting the breach of fiduciary duty by the defendants and the amount of damages may technically be mere stare decisis in a subsequent action brought by a Class B Debenture holder, the effect is greater than merely setting a precedent. Other courts could, as a matter of comity, give deference to these findings as a determination of the identical factual questions presented in a subsequent suit.

For the foregoing reasons, this action is certifiable as a class action under Rule 23(b)(1)(B).

## II. JURISDICTION

The defendants concede that this court has jurisdiction over the claims of Mr. Eliasen. However, they argue that this action cannot be certified as a class action unless each potential class member has over $10,000 in controversy. The defendants argue that because jurisdiction over this case is based on diversity of citizenship under 28 U.S.C. § 1332, each class member must independently satisfy the amount-in-controversy requirement.

■ The Court agrees with the defendants that this is not a case in which the class members may aggregate their individual claims to satisfy the amount-in-controversy requirement. Such aggregation in class actions is only permitted where the plaintiffs unite to enforce a single title or right in which they have a common and undivided interest. *Snyder v. Harris*, 394 U.S. 332, 335, 89 S.Ct. 1053, 1056, 22 L.Ed.2d 319 (1969). Such class actions were classified as "true" class actions under Rule 23 of the Federal Rules of Civil Procedure prior to the 1966 amendments.

In *Snyder*, the plaintiff sued the directors of a company in which she was a shareholder, alleging that the directors sold their shares of the company stock for an amount in excess of the stock's fair market value, and that this excess should be distributed to the shareholders. The plaintiff's damages were less than the jurisdictional amount, but she argued that her damages could be aggregated with those of other class members. The Supreme Court, apparently relying on the traditional notion that each shareholder in a company has an individual claim, rejected the argument.

■ The plaintiff's suit against the directors is not over any common and undivided interest. Rather, it seeks money damages caused to each individual debenture holder by the single breach of duty by the directors. The suit is similar to that in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), where the Supreme Court barred aggregation of the claims of various lakeshore property owners against a polluter of the lake. The members do not seek an adjudication with respect to property in which they have a common and undivided interest.

---

**3.** That this Court's construction of the debenture will be adhered to in future cases is reflected in the reliance which the parties in this action place on the construction that the Wisconsin Supreme Court gave to these debentures in *Biltchik v. Green Bay & Western Railroad Co.*, 250 Wis. 177, 26 N.W.2d 633, certiorari denied 332 U.S. 835, 68 S.Ct. 216, 92 L.Ed. 408 (1947). *Biltchik*, however, was a class action by all holders of Class B Debentures.

That the plaintiff seeks to liquidate the GB&W, if necessary, to satisfy his claims does not alter this. *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921), overruled on other grounds, *Toucey v. New York Life Insurance Co.*, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100 (1941), found that a suit challenging a reorganization was a true class action. But that case involved an unincorporated association and the suit would inevitably affect all its members. Most of the class members in this action no longer own an interest in the GB&W, and a liquidation of the GB&W would not inevitably affect the members except, as already noted, in foreclosing future attacks on its assets.

 Concluding that the plaintiff has no common and undivided interest and therefore may not aggregate his claims does not end the matter. The defendants concede that Mr. Eliasen, and indeed 32 to 45 other debenture holders, individually satisfy the amount-in-controversy requirement. Once this court has jurisdiction over the case, it may also have ancillary jurisdiction over the class members who do not independently satisfy the amount-in-controversy requirement.

 Earlier this decision found that this action was certifiable as a class action under Rule 23(b)(1)(B) because there was a risk that adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. Except for the word "substantial," this finding is identical to one of the findings required for intervention of right under Rule 24(a). Where intervention is of right, the courts and authorities are in substantial agreement that there need be no independent jurisdictional grounds to support the intervenor's claim. *Babcock & Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 540 (8th Cir. 1970). See 3B Moore's Federal Practice ¶ 24.18[1] (1981). Since ancillary jurisdiction is "a common-sense solution to the problems of piecemeal litigation that otherwise would arise by virtue of the limited jurisdiction of the federal courts prescribed in Article III and the complexity of many modern lawsuits," Wright, Miller & Cooper, Federal Practice and Procedure § 3523, at 58 (1972), ancillary jurisdiction should attach whether a person is intervening as of right under Rule 24(a) or being made a class member under Rule 23(b)(1)(B).

The 1966 amendments to Rule 24(a) have not caused courts to limit ancillary jurisdiction over the claims of intervenors of right. Prior to 1966, intervention of right was generally not permitted unless the intervenor might have been legally bound by the judgment or unless the intervenor claimed an interest in property within the control of the court.[4] The 1966 amendments liberalized intervention of right by adding the above language respecting practical impairment.[5]

---

**4.** As originally promulgated in 1937, Rule 24(a) read as follows:

"(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof."

In 1946, clause (3) was amended to read as follows:

"(3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property *which is in the custody or subject to the control or disposition* of the court or an officer thereof."

**5.** Rule 24(a) after the 1966 amendments reads as follows:

"(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

The expansion of intervention of right by the 1966 amendments did not extend beyond the scope of ancillary jurisdiction. Although ancillary jurisdiction over claims of intervenors of right was recognized in *Phelps v. Oaks,* 117 U.S. 236, 6 S.Ct. 714, 29 L.Ed. 888 (1886), long before the 1966 amendments liberalized Rule 24(a), post-1966 cases maintain that the federal courts have jurisdiction over the claims of intervenors of right under amended Rule 24(a). The Fifth Circuit so held in 1970. See *Smith Petroleum Service, Inc. v. Monsanto,* 420 F.2d 1103, 1113–15 (5th Cir. 1970). A recent district court case held likewise where the intervention of right was expressly based on the practical impairment language added in 1966. See *Usery v. Brandel,* 87 F.R.D. 670, 681 (W.D.Mich. 1980). Other post-1966 cases have referred to ancillary jurisdiction over claims of intervenors of right without adding qualifications. See, e.g., *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 375 n. 18, 98 S.Ct. 2396, 2403 n.18, 57 L.Ed.2d 274 (1978); *Babcock & Wilcox Co. v. Parsons Corp.,* 430 F.2d 531, 540 (8th Cir. 1970).

Concluding that this court has ancillary jurisdiction over the class members who do not have over $10,000 in controversy is consistent with *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). In *Zahn,* the Supreme Court held that in a class action under Rule 23(b)(3), where the claim of each member is separate and distinct, each member must individually satisfy the amount-in-controversy requirement. The three dissenting justices argued that since the court had jurisdiction over some members whose individual claims were over $10,000, those factors which have supported ancillary jurisdiction in other areas also support its application here. The majority opinion did not discuss ancillary jurisdiction, but some commentators have interpreted the opinion as deciding *sub silento* that ancillary jurisdiction does not reach plaintiffs whose separate individual claims do not reach the jurisdictional amount. See, e.g., 3B Moore's Federal Practice ¶ 23.95 (1981).

Nonetheless, *Zahn* did not shrink the scope of ancillary jurisdiction. Rather, it followed the principle announced in *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), that changes in the Federal Rules of Civil Procedure cannot affect the judicial construction of "matter in controversy" or other jurisdictional doctrines. Finding that this court has ancillary jurisdiction over members who do not individually satisfy the amount-in-controversy requirement in a Rule 23(b)(1)(B) class action does not require an extension of the ancillary jurisdiction doctrine. Rather, as shown above, it simply recognizes that the scope of ancillary jurisdiction has previously been held to apply to persons in the situation of the class members with less than $10,000 in controversy.

THEREFORE, IT IS ORDERED that this action is maintainable as a class action under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure, and that the class shall consist of all holders of Class B Debentures of the Green Bay & Western Railroad Company as of November 29, 1977, excluding the members of the Board of Directors and those persons and entities holding such debentures for the benefit of the directors or members of their families.